APGAR *v.* CHRISTOPHERS.

*(Circuit Court, D. New Jersey.  December 1, 1887.)*

ESTOPPEL—BY DEED—RECITALS.

> A person made a will, devising her real estate to her niece, her mother, and her brother. and "to the survivor of them, and to the heirs and assigns of such survivor." The mother died, and afterwards the brother undertook to convey by deed to the niece his share of the estate, in fee-simple, the deed reciting that said property was now vested in him and in said niece in fee-simple, and that he desired the whole fee to be vested in said niece. Some years after, the niece died, leaving the brother survivor. *Held,* the estate was held by the devisees in joint tenancy; and the fee-simple, being contingent on survivorship, did not vest in the brother until several years after the date of his deed. Yet when, from the contents of a deed, it appears manifestly that the parties believed they were negotiating for the fee, such a deed, containing such a recital, in the absence of fraud, being for a sufficient consideration, and not contravening the rights of creditors, will pass the subsequently acquired title.

In Equity.

*Peter Bentley,* for complainant.

*S. B. Ransom,* for defendant.

WALES, J. This is a bill to enjoin the defendant from prosecuting an action of ejectment, brought in this court, for the recovery of certain lands in Jersey City. Both parties claim title under the will of Mary Vermilya, who died, seized of the premises in question, November 7, 1824. Her will, bearing date the second of September, 1824, contains the following devise:

"And I also give and devise all my real estate, whatsoever and wheresoever, unto my said niece, Mary Ann Jarvis, my mother, Sarah Vermilya, and my brother, Thomas Vermilya, all of the said city of New York, to the survivor of them, and to the heirs and assigns of said survivor."

Sarah Vermilya, one of the devisees, died March 30, 1834. Thomas Vermilya, by deed dated October 10, 1834, undertook to convey the said

real estate in fee-simple to Mary Ann Jarvis, his surviving co-tenant. This deed, which is without any covenant of warranty, after reciting the above-mentioned devise, *verbatim* contains also this additional recital:

"And whereas Sarah Vermilya, my mother, is now dead, and the said property is now vested in me (the said Thomas Vermilya) and Mary Ann Jarvis in fee-simple, and I (the said Thomas Vermilya) being desirous of vesting the whole in my said niece, Mary Ann Jarvis, now, therefore, this indenture witnesseth," etc.

On January 9, 1840, Mary Ann Jarvis intermarried with Thomas S. Christophers, and on the sixth of September, 1844, she and her husband executed a deed for the conveyance of the land to John Arbuckle, from whom, by sundry mesne conveyances, it has come into the possession of the complainant. Thomas Vermilya died June 10, 1853, leaving a will, by which he devised his whole estate to the husband and the two sons and only children of Mary Ann Jarvis, to be divided among them, share and share alike. The husband and one of the sons died intestate, unmarried, (the deceased son dying without issue,) leaving the defendant their only heir at law.

The first question arising out of these facts is, what effect is to be given to the deed of Thomas Vermilya, of October 10th? On the one side, it is claimed that the deed could not and did not convey more than the life-estate of the grantor in the land, which was all the vested interest he had at the time of its execution, and that the fee, being contingent on his surviving his niece, did not vest in him until after her death, and consequently passed by his will to her husband and two sons. But the defendant insists that, as it clearly appears from the recital, both of the parties to the deed believed that they held the fee-simple, and that it was the intention of the one to convey, and of the other to accept, "all his estate, right, title, and interest whatsoever under the will of the said Mary Vermilya, or otherwise," the recital operates as an estoppel, conveying the after-acquired fee of the grantor, and binding on him, and all who claim under him. The devisees of Mary Vermilya took an estate in joint tenancy; and thus the fee, being contingent on survivorship, did not vest in Thomas Vermilya until several years after the date of his deed. Generally, a deed of bargain and sale, without covenant of warranty, for the conveyance of land, conveys only the interest vested in the grantor at the time of its execution, and, under the rigorous rules of the common law, would not operate to pass an after-acquired interest; but when, from the contents of the instrument, as by a recital or otherwise, it manifestly appears that the parties believed they were negotiating for the fee, and it was the intention of one to sell and convey, and of the other to buy and accept, the land on that belief and understanding, the averment of the grantor that he possessed the fee, and intended to convey it, will in equity, if not at law, estop him from setting up an after-acquired title, in contradiction of his own solemn declaration. In other words, equity will decree that a deed containing such a recital, in the absence of fraud, being for a sufficient consideration, and not contravening the rights of creditors, will pass the subsequently acquired es-

tate. The doctrine of estoppel by deed is well settled. It is founded on the plainest principle of justice, which will not permit a man to gainsay his own expressed declarations to the injury of another who, in good faith, has relied and acted on them. The second recital in the deed of October 10th leaves no doubt as to the belief and intention of the grantor, which are clearly expressed by the words, "the said property is now vested in me (the said Thomas Vermilya) and Mary Ann Jarvis in fee-simple, and I (the said Thomas Vermilya) being desirous of vesting *the whole* in my said niece," etc.

Estoppel by deed is recognized and enforced, both in law and equity. It has been variously defined, and its application depends on the facts and circumstances of each particular case, but where these are admitted or known, its operation is uniformly the same. Condensing the views of an able commentator on this subject, it may be said that the operation and effect of a deed, in relation to the title of a grantor, are to be governed by its language; but the parties thereto may bind themselves in respect to the title by setting forth a particular state of things as a part or basis of the grant, and, when this is done with sufficient clearness to leave no doubt as to the intention, it will fall within the general principle that matters which have been solemnly reduced to writing cannot be denied, and constitutes an estoppel by deed. It follows that a man may bind himself irrevocably by putting his seal to a grant or covenant, and will not be allowed to disprove or contradict any averment contained in the instrument, and essential to its purpose. A recital or allegation in a deed or bond which is certain in its terms, and relevant to the matter in hand, will therefore be conclusive between the parties in any controversy growing out of the instrument itself, or the transactions in which it was executed. 2 Smith, Lead. Cas. 818, note. While different and conflicting opinions may be found in relation to this question, much the larger weight of authority supports the position of the complainant. Many of these authorities are reviewed in *Van Rensselaer* v. *Kearney*, 11 How. 322, and the court there say:

"The principle deducible from these authorities seems to be that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey or, what is the same thing, if the seizin or possession is affirmed in the deed, either in express terms or by necessary implication, the grantor, and all persons in privity with him, shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies."

The same principle was reaffirmed without qualification in *French* v. *Spencer*, 21 How. 240, where the opinion of the court concludes on the law and the facts in that case as follows:

"Here, the after-acquired naked fee is set up to defeat Fosgit's deed, made forty years ago in good faith, for a full consideration, and to oust the possession of Spencer's heirs, holding under that deed. The rule has always been

that, where there was a warranty or covenants for title that would cause circuity of action, if the vendee was evicted by the vendor, then the deed worked an estoppel. But the rule has been carried further, and is now established, that where the grantor sets forth on the face of his conveyance, by averment or recital, that he is seized of a particular estate in the premises, and which estate the deed purports to convey, the grantor, and all persons in privity with him, shall be estopped," etc.; following the language of *Van Rensselaer* v. *Kearney.*

Instructed by these utterances of the supreme court, and having undoubted knowledge of the intention of the parties to the deed of October 10th, and of the fact that the deed purports to convey the fee, we have no hesitation in deciding that the after-acquired fee of Thomas Vermilya passed by that deed, and that the defendant, representing, as he does, the grantor, is estopped from controverting the complainant's title. In coming to this conclusion, we have not overlooked the existence of the first recital in the deed, which shows to the legal mind the true nature of the title of Thomas Vermilya, and from which it is evident that he was mistaken in the belief that he was at that time possessed of the fee, and had the right to convey it to his niece. The first recital contradicts the second one, and thus produces "estoppel against estoppel," which was formerly held to set the matter at large, and, the whole truth appearing on the face of the instrument, there could be no estoppel. But this rule has been modified, if not overturned, by recent decisions. In *Hannon* v. *Christopher*, 34 N. J. Eq. 459, where precisely the same questions we have been considering were before the court, Vice-Chancellor VAN FLEET, in an able and well-reasoned opinion, observes: "This rule, like all other legal rules, was formulated for the doing of justice; and when it cannot be used for that purpose, but its enforcement will lead to injustice or wrong, it should be disregarded." And the learned vice-chancellor cites *Jolly* v. *Arbuthnot*, 4 De Gex & J. 224, and *Morton* v. *Woods*, L. R. 4 Q. B. 293, to show that the rule has been recently repudiated by three of the superior courts of England,—chancery, exchequer chamber, and queen's bench.

Particular clauses must be read in the light of the whole instrument. Admitting that the whole truth appears on the face of Thomas Vermilya's deed, it must also be admitted that the grantor and the grantee mistook the meaning of the first recital, and acting in good faith on a misconception of their interest under the will of Mary Vermilya, entered into the negotiation for the sale and conveyance of the fee. Nearly half a century elapsed before any one attempted to dispute the title which was conveyed under such circumstances, and the defendant is now seeking in a court of law, by the enforcement of a technical rule, to invalidate, not only the deed of October 10th, but also the deed executed by his parents to John Arbuckle, and for which they received a valuable consideration. For this court to give its aid to the defendant, in his effort to overthrow the complainant's title by such means, by refusing the relief asked for by the latter, would be doing the greatest injustice, and be inconsistent with equity and good morals; and it is therefore our duty to grant such relief to the complainant as it may be in our power to afford. At the hearing

of the motion for a preliminary injunction in this cause, (10 Fed. Rep. 859,) Judge NIXON said:

"Estoppel is a legal, as well as an equitable, defense to an action of ejectment; and the defendant is not compelled to trust to this defense at law, and then, if he failed, to come here to maintain his equitable rights. It becomes, therefore, a question of proceeding, and in all such cases it is the duty of a court of equity to direct the course which will tend to diminish useless litigation. It is better for all parties to meet the question at once in a suit where all defenses can be considered, and where, in a single proceeding the whole controversy, in all its aspects, may be settled."

It has always been held that equity will assume jurisdiction when by so doing circuity of action will be prevented; and for this purpose we are warranted, in our view of the law pertaining to the facts of this case, in ordering a decree for the complainant.

The complainant also contends that equity will, on the facts presented in this case, decree a conveyance of the after-acquired fee of Thomas Vermilya, as an equitable assignment of a possibility, upon the ground of an agreement. There are strong reasons and authority in support of the proposition that such an agreement, as between the original parties, may be carried into effect by a court of equity; but there may be some doubt whether, under the circumstances here, the defendant can be decreed to execute a conveyance stipulated for in an executory contract made by one with whom he was so remotely in privity. It is not, however, necessary to consider this question now, as the complainant will have sufficient practical relief by the decree of injunction.

McKENNAN, J., concurring.