MARY M. GARDNER ET AL. *v.* JAMES
E. GARDNER ET AL.

[No. 728, September Term, 1974.]

*Decided April 9, 1975.*

The cause was argued before ORTH, C. J., and MASON, J., and ROBERT C. MURPHY, Chief Judge of the Court of Appeals, specially assigned.

*Paul L. Wilkins* for appellants.

*James E. Thompson, Jr.,* and *Phillips L. Goldsborough, III,* with whom was *Robert F. Price* on the brief, for appellees.

MURPHY, J., delivered the opinion of the Court.

By a deed dated April 13, 1945, B. Clay Coppage and his wife conveyed a 408-acre farm to James E. Gardner and his son, Irvin T. Gardner. The granting and habendum clauses recited that the property was granted and conveyed to the Gardners, as parties of the second part, "their heirs and assigns, forever and unto the survivor of them the said parties of the second part and unto the heirs and assigns of the survivor of them." In the same deed, the Gardners jointly and severally agreed to assume two mortgages of the Coppages which encumbered the property.

On December 19, 1969, Irvin died intestate; on November 13, 1970, his widow and children (the appellants) filed a bill of complaint in the Circuit Court for Queen Anne's County against James and his wife (the appellees), seeking partition or sale of the farm property and an accounting of proceeds from the sale of farm products and timber. The bill alleged that James and Irvin had purchased the farm as tenants in common and that since its acquisition, the property "had

been managed and operated for the mutual benefit" of Mr. and Mrs. James Gardner and Mr. and Mrs. Irvin Gardner "on a partnership basis." The appellees demurred to the bill, claiming that the 1945 deed disclosed on its face that it created a joint tenancy and not a tenancy in common; that upon Irvin's death, title to the farm vested in James as the survivor; and that the appellants were therefore not entitled to a partition or an accounting. On January 14, 1971, in a manner not disclosed by the record, a copy of the deed was filed in the proceedings, following which Judge B. Hackett Turner sustained appellees' demurrer without leave to amend. The court thereafter granted appellants' motion for rehearing on the demurrer. On February 25, 1971, appellees, pursuant to Maryland Rule 326, demanded production of the deed, which was ordered over appellants' objection. On April 16, 1971, appellees withdrew their demurrer and filed an answer, contending that the deed created a joint tenancy, that the farm was operated as a joint tenancy, and that a partnership never existed. Appellees further alleged that James, as sole owner of the property, was under no obligation to account for profits from the farm and could sell it without appellants' consent. On February 1, 1973, another hearing was held before Judge Turner; at that time, appellants contended that the deed was ambiguous, and they proffered parol evidence to show that it was the intention of James and Irvin to establish a tenancy in common when they acquired the land; in addition, appellants maintained that the assumption of mortgages by the Gardners at the time of the conveyance destroyed any joint tenancy which may have been created. After another copy of the deed was introduced in the proceedings, Judge Turner declined to receive the proffered evidence; he concluded that the granting clause of the deed established a joint tenancy with the right of survivorship and ordered further argument on the question whether the Gardners' assumption of the mortgages destroyed the joint tenancy. On October 19, 1973, appellants filed an amended bill of complaint, making the following additional allegations:

". . . that the intentions of the parties was to hold as

tenants in common and further that the way and manner in which the parties dealt with the property destroyed the joint tenancy, if any; that the reference to survivorship in the granting and habendum clauses was either an accident or mistake as it was not the intention of the parties to hold as joint tenants."

Appellees demurred to the amended complaint, stating:

"(1) In order to hear evidence regarding the first new allegation the Court would be considering parol evidence to vary and contradict the terms of the deed without any allegation of fraud, accident or mistake.

(2) That the second new allegation is insufficient in law in that it neither alleges a failure of one of the four unities necessary for joint tenancy nor does it allege *FACTS* which, if proved, would permit the Court to find a failure of one or more of the four unities."

Appellants thereafter filed a motion ne recipiatur to the demurrer, claiming that accident or mistake had been alleged, that the bill of complaint did not have to set out facts in detail, and that their allegation that the property was operated on a partnership basis, if proven, would destroy joint tenancy.

On January 30, 1974, Judge Turner denied appellants' motion ne recipiatur and sustained appellees' demurrer without leave to amend. The court found that the deed was not ambiguous, that it created a joint tenancy on its face, and that title to the property vested in James as the survivor. It said:

"The Amended Bill of Complaint in this case fails to aver the facts necessary with certainty and positiveness to entitle Complainants to relief. Facts must be set out, not mere conclusions of the pleader that we have here. The averments in the Bill of Complaint here are apparently upon information

and belief without any statement as to the cause of such belief; and are insufficient to support the cause of action.

"In view of the fact that the Court considers the deed to create a joint tenancy, parol evidence could not be admitted to vary or contradict the terms of the deed without proper allegations of fraud, accident or mistake. Mere conclusions of the pleader that there was found accident or mistake would not be sufficient to enable the Court to grant relief."

\* \* \*

"To obtain the relief Complainants seek, and to which they feel entitled, an action to reform the deed should have been instituted. However, in such an action, the Complainants would have to prove their case by a preponderance of evidence; not only would a mutual mistake have to be shown, but the precise agreement which the parties intended but failed to express would have to be proven beyond a reasonable doubt under the law in Maryland . . . ."

On appeal from the decree entered by the court below, appellants contend that the lower court erred in concluding that the deed created a joint tenancy. It is true, of course, that joint tenancies are not favored either legislatively or judicially in Maryland. *See Alexander v. Boyer*, 253 Md. 511, 253 A. 2d 359 (1969); *Register of Wills v. Madine*, 242 Md. 437, 219 A. 2d 245 (1966). But they are permitted in this State, *Alexander v. Boyer, supra*, 253 Md. at 519, and draftsmen need not go to extraordinary lengths to create a joint tenancy. 2 American Law of Property § 6.3 (A. J. Casner ed. 1952). The principal characteristic or chief incident of a joint tenancy is the right of survivorship, 2 H. Tiffany, Real Property § 419 (3rd ed. 1939), and the inclusion of such a right in a deed is a clear indication of an intention to create a joint tenancy, *Michael v. Lucas*, 152 Md. 512, 137 A. 287 (1927). *See also Lopez v. Lopez*, 250 Md. 491, 243 A. 2d

588 (1968). While Maryland Code (1974) Real Property Article, § 2-117 [1] specifies that to create an estate in joint tenancy the instrument should expressly so provide, the words "joint tenants" or "joint tenancy" need not be used; the statutory requirement is only one of clear manifestation or intention, and not of particular words. *Michael v. Lucas, supra; Boyd v. Boyd*, 24 Md. App. 497, 332 A. 2d 328 (1975).

Notwithstanding the inclusion in the deed of the phrase "unto the survivor of them . . . and unto the heirs and assigns of the survivor of them," appellants argue that the prior use of the words "heirs and assigns" following the names of the grantees renders the clause contradictory and ambiguous, a defect which they claim must be construed strongly against appellees in view of § 2-117 and the Maryland cases. Specifically, appellants argue in their brief:

> "The first part of the granting clause granted and conveyed to the two Gardners and their heirs and assigns forever. This is contradicted by the balance of the granting clause which attempts to establish a survivorship and unto the heirs and assigns of the survivor of them. Had the granting clause said 'to the said James E. Gardner and Irvin T. Gardner, their assigns and unto the survivor of them, the said parties of the second part and unto the heirs and assigns of the survivor of them,' it would not have been contradictory. But where in the first instance you grant and convey unto the parties of the second part their heirs and assigns, you cannot then in the same clause take away from the grantees and give to the heirs and assigns of the survivor."

---

1. Section 2-117 provides that:

"No deed, will, or other written instrument which affects land or personal property, creates an estate in joint tenancy, unless the deed, will, or other written instrument expressly provides that the property granted is to be held in joint tenancy."

In 1945, when the Gardner deed was executed, this provision was basically the same. Code (1939), Art. 50, § 14.

We agree with the lower court that no ambiguity exists by reason of the particular placement of the words "heirs and assigns" in the deed; the words are merely descriptive of the estate conveyed — a fee simple. According to 26 C.J.S. *Deeds* § 124 (1956):

> "The term 'heirs' is a technical term, clothed in the law of real property with a special significance. It may, however, be used in a deed as a word of limitation or as a word of purchase, according to the grantor's intent, which is to be determined from an examination of the entire instrument. When used technically the term 'heirs' is one of limitation, and unless an intention to the contrary appears, it will be presumed to have been used in its technical sense as a word of limitation."

To like effect, *see Lobe v. Goldheim*, 153 Md. 248, 138 A. 5 (1927). The addition of the term "assigns" does not alter this conclusion. The words "heirs and assigns," as one New York court has noted,

> "are the usual technical words of conveyance granting a title in fee simple. At common law they were essential to the conveyance. They are unnecessary for that or any purpose . . . but when used in wills or deeds such is their meaning. They are merely words of limitation used to describe the nature of the estate given . . . ."
> *In re Denari's Will*, 165 Misc. 450, 300 N.Y.S. 1279, 1283 (1937).

*Accord Glotzbach v. Kneessi*, 73 App. D. C. 282, 121 F. 2d 30 (1941); *Morgan v. Johnson*, 106 F. 452 (8th Cir. 1901); *In re Witte's Estate*, 102 Pa. Super. 535, 157 A. 328 (1931); *In re Johnson's Estate*, 199 Wis. 154, 225 N. W. 818 (1929).

Thus, in *Craft v. Wilcox*, 4 Gill. 505 (1846), a conveyance to "Henry Wilcox and wife, and their heirs and assigns, and the survivor of them" (although not creating a joint tenancy) was held to establish a right of survivorship. In *Wolf v. Johnson*, 157 Md. 112, 145 A. 363 (1929), a deed granting

property to a husband and wife "as joint tenants, their heirs and assigns in fee simple" to have and to hold "as joint tenants with the common law right of survivorship" was held to create a joint tenancy. In *Marburg v. Cole,* 49 Md. 402 (1878), a conveyance to "Ann Rebecca Cole and Abraham Cole, the husband, their heirs and assigns, in fee" was said not to create a tenancy in common but rather to establish a tenancy by the entireties with a right of survivorship.

We thus conclude that it was the intention of the parties, plainly expressed in the language of the deed itself, to hold the purchased property jointly, with right of survivorship.

Appellants next contend that the assumption of the two mortgages by the Gardners in 1945 destroyed the unity of title essential to a joint tenancy.[2] They rely on *Register of Wills v. Madine, supra,* for the proposition that since a conveyance of legal title by all the joint tenants destroys the joint tenancy in the property conveyed, a similar result is mandated for a joint assumption of mortgages. *Madine* held, in effect, that joint tenants who conveyed their land to the State by a fully executed deed ceased to own the property as joint tenants but held bare legal title as trustees for the State which owed them the purchase price for the property as tenants in common. In the present case, however, no such drastic curtailment of the jointly held interest obtains by reason of the joint assumption of the mortgages on the property. In a note appearing at 64 A.L.R.2d 918, 935 (1959), it is said:

> "There appears to be no basis at all for supposing that the mere act of both or all of the joint tenants in executing a mortgage on the joint property will

---

**2.** The characteristics of a joint tenancy are its four unities; viz., the unities of interest, title, time and possession. These must coincide if any is lacking, the estate cannot be one of joint tenancy. The destruction of one or more of the four unities severs and destroys the joint tenancy and this may be done by a conveyance, voluntary or involuntary, of the interest of one of the joint tenants. A joint tenant may convey his interest by deed, and the result is a severance of the joint tenancy and the creation of a tenancy in common between the grantee and the surviving joint tenant or tenants. Thus, a joint tenancy will be destroyed where one of the joint tenants mortgages his interest. Eder v. Rothamel, 202 Md. 189, 95 A. 2d 860 (1953).

sever the joint tenancy; moreover, no ruling on that question has been found."

Similarly, in 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 17 (1965), it is noted that "[i]t has also been recognized or assumed that a mortgage of the jointly owned property by both or all joint tenants will not sever the joint tenancy." And, in *Illinois Public Aid Commission v. Stille*, 14 Ill. 2d 344, 153 N.E.2d 59, 63-64 (1958), the Supreme Court of Illinois said:

"Where both joint tenants join in the Mortgage . . . it has generally been assumed that there is no severance and that when the mortgage is released, the joint tenancy continues unimpaired."

Thus, we conclude that the joint assumption of mortgages by the Gardners did not destroy the joint tenancy.

Appellants say that the trial court erred in considering the provisions in the deed itself in ruling on appellees' demurrer. We disagree. Because appellants' basic allegation that James and Irvin held the property as tenants in common was grounded in the deed, it was proper for appellees to demand its production pursuant to Maryland Rule 326 and have it treated as if incorporated into the pleading. *See Home Indemnity v. Basiliko*, 245 Md. 412, 226 A. 2d 258 (1967).[3] In view of what we have held, appellants' allegations that the farm was managed and operated on a partnership basis and that it was the intention of the parties to hold the property as tenants in common, even if factual, rather than conclusory, could not change the result. Thus, we hold that the lower court did not err in sustaining the demurrer to appellants' amended bill of complaint or in denying leave to amend.

---

3. Rule 326 provides:

"Where any cause of action or defense is founded upon a written instrument, any party shall, upon written demand of the opposite party served upon him within the time allowed for pleading, file in the proceedings such instruments or a true or photostatic copy thereof, which, when filed, shall be treated as if incorporated in the pleading. The time for pleading shall be extended until fifteen days after the filing of such instrument or copy."

In view of our holding that the deed created a joint tenancy, we conclude that the lower court correctly excluded parol evidence relating to the intention of the parties as to the tenancy and to the manner in which the property was managed. *See Mullins v. Ray,* 232 Md. 596, 194 A. 2d 806 (1963).

*Decree affirmed; costs to be paid by appellants.*