DOROTHY O. McMANUS ᴇᴛ ᴀʟ. *v.* EVA SAMPSON SUMMERS,

Aᴅᴍɪɴɪsᴛʀᴀᴛʀɪx ᴏғ ᴛʜᴇ Esᴛᴀᴛᴇ ᴏғ Mᴀʀʏ Sᴀᴍᴘsᴏɴ Sᴍɪᴛʜ

[No. 17 (Adv.), September Term, 1981.]

*Decided June 3, 1981.*

The cause was argued before Mᴜʀᴘʜʏ, C. J., and Sᴍɪᴛʜ, Eʟᴅʀɪᴅɢᴇ, Cᴏʟᴇ, Dᴀᴠɪᴅsᴏɴ and Rᴏᴅᴏwsᴋʏ, JJ.

*Mark R. Thompson,* with whom were *Robert C. Heeney* and *Heeney, Armstrong & Heeney* on the brief, for appellants.

*Joseph M. Quirk,* with whom were *Rowan, Abell, Quirk & Quinn* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that under the facts and circumstances of this case a conveyance to two persons described in that deed as husband and wife, which conveyance purported to be to them as tenants by the entirety, created a joint tenancy if the grantees in fact were not legally married.

The genesis of this dispute was a trip to Texas by Dollie Collins Smith in 1952. Her daughter claimed this trip was "to procure a divorce under threats that, if she did not do so, O. Thaxter Smith would seek a divorce on his own in another jurisdiction and deprive Dollie Smith of any and all financial support." The divorce was obtained. He then married Mary Sampson Smith. Thereafter they purchased real estate in Montgomery County. The deed referred to the "parties of the second part" as "O. THAXTER SMITH and MARY R. SMITH, his wife . . . ." The land in question was conveyed "unto the said parties of the second part, in fee simple, as TENANTS BY THE ENTIRETY . . . ." [1]

Mr. Smith died testate many years later, leaving his estate to his children. The children filed a declaratory judgment action against Mary Sampson Smith. Upon her subsequent death her personal representative was substituted as a party defendant. The petition alleges that they are the devisees and legatees of their father; his death; that they are the surviving children of Dollie Collins Smith; that Dollie Collins Smith and O. Thaxter Smith were legally married; that Dollie C. Smith obtained a divorce a vinculo matrimoni from O. Thaxter Smith in Texas "although

---

1. This case might not be here had the author of the deed used the language of some scrivenors such as "to John Smith and Susie Smith, his wife, as tenants by the entirety, and not as tenants in common, their assigns, and the heirs and assigns of the survivor of them."

neither were domiciliaries of the State of Texas, nor were they *Bona Fide* residents of the State of Texas for more than One (1) year nor residents for six (6) months in the County prior to the time that said divorce was obtained"; that Dollie C. Smith was a domiciliary of Washington, D.C. "who for purposes of obtaining the divorce was in Texas for only a short period of time and then had no present intention of making Texas her home and who immediately after obtaining said divorce, returned to the realty she owned in Washington, D.C., where she remained until she departed this life on February 20, 1973"; that O. Thaxter Smith "was a domiciliary of Washington, D.C. and was not present for any portion of the divorce proceedings in the State of Texas," which proceedings were ex parte; that O. Thaxter Smith did not personally appear in or in any way participate in the divorce proceedings; that the divorce in Texas was null and void; the subsequent marriage between O. Thaxter Smith and Mary Sampson Smith; the acquisition of the property in question to which they "purportedly took said title as husband and wife as Tenants by the Entirety although they were not validly married"; and that O. Thaxter Smith "bequeathed all his property, real, personal and mixed, to the Plaintiffs herein, absolutely and in fee." They sought a declaration that the Texas divorce is "a nullity and of no legal consequence," that the land in question was owned by O. Thaxter Smith and Mary R. Smith as tenants in common, and that the plaintiffs should inherit their father's interest in that property.

Each side moved for summary judgment. Affidavits were filed by both sides, including one by one of the Smith daughters which would clearly give rise to the inference that her mother was not domiciled in Texas at the time of the divorce action. The trial judge (Cahoon, J.) granted the defendant's motion for summary judgment. He said:

> For the Plaintiffs to have any interest in the subject property their testator had to hold the property in a cotenancy which did not constitute a joint tenancy with Mary Smith. The deed of conveyance manifestly created a joint tenancy.

He pointed out that there were "no suggestions in the record of fraud relating to the deed, nor of any circumstances of severance of the unities of joint tenancy." He found trial unnecessary, saying in relevant part, "I am unable to discern any asserted facts from which an intention not to create a joint tenancy could be inferred. The disputed facts relate to the *capacity* of the grantees to take a tenancy by the entirety not their *intention* to do so." (Emphasis in original.) Accordingly, the property in question was "declared to be owned solely by Mary R. Smith or her heirs, devisees, or legatees as the survivor of O. Thaxter Smith . . . ." The decree specified that the Smith children "are not entitled to inherit any interest in the real property . . . ." The Smith children appealed to the Court of Special Appeals. We granted the writ of certiorari prior to consideration of the case by that court.

The Smith children argue, "In the absence of an express provision creating a right of survivorship, a failed tenancy by the entirety should become a tenancy in common." They rely upon Code (1974) § 2-117, Real Property Article, and *Donnelly v. Donnelly,* 198 Md. 341, 84 A.2d 89 (1951), which case we shall discuss later.

This Court has had occasion many times to consider the predecessor to § 2-117, most recently found as Code (1957, 1973 Repl. Vol.) Art. 21, § 5-117, and previously as Code (1957) Art. 50, § 9. The statute now reads:

No deed, will, or other written instrument which affects land or personal property, creates an estate in joint tenancy, unless the deed, will, or other written instrument expressly provides that the property granted is to be held in joint tenancy.

The revisor's note indicates that it is but stylistically changed from the predecessor statute. It appears to have been unchanged from its original enactment by Chapter 162 of the Acts of 1822 until the style changes were made. In an application of this statute Judge Alvey said for the Court in *Marburg v. Cole,* 49 Md. 402 (1878);

By the common law of England, which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are, in the contemplation of the common law, but one person, and hence they take, not by moieties, but the entirety. They are each seised of the entirety, and the survivor takes the whole. [*Id.* at 411.]

\* \* \*

The Code, Art. 49, sec. 12, being the codification of the Act of 1822, ch. 162, provides that no instrument of conveyance shall be construed to create a joint tenancy, unless it is expressly provided that the property shall be held in joint tenancy. But, as we have seen, the estate conveyed to husband and wife in a deed like the one before us, is not to them as joint tenants at the common law, and hence the statute just referred to does not affect or apply to such an estate as that conveyed to husband and wife. This has been expressly so held by this court, in *Craft v. Wilcox,* 4 Gill. 504. [*Id.* at 412.]

As put in Kepner, *The Effect of an Attempted Creation of an Estate by the Entirety in Unmarried Grantees,* 6 Rutgers L. Rev. 550, 554 (1952), "It is uniformly agreed that a tenancy by the entirety cannot be established unless the grantees are legally married." He cites for this 2 Tiffany, *The Law of Real Property* 220 (3d ed., Jones, 1938). A similar statement was made by this Court in *Mitchell v. Frederick,* 166 Md. 42, 48, 170 A. 733 (1934), citing an earlier edition of Tiffany.

It is true that under the predecessor of § 2-117 joint tenancies have been viewed with disfavor. *See, e.g., Williams v. Dovell,* 202 Md. 351, 358, 96 A.2d 484 (1953). See also 4 G. Thompson, *Commentaries on the Modern Law*

*of Real Property,* § 1775 at 11 (J. Grimes Repl. Vol. 1961). Although viewed with disfavor, it must be remembered that as to the formula for creation of joint tenancies Chief Judge Bond observed for the Court in *Marshall v. Security Storage Co.,* 155 Md. 649, 652-53, 142 A. 186 (1928), "The [statutory] requirement is only one of clear manifestation of intention, not one of particular words," citing *Craft v. Wilcox et al.,* 4 Gill. 504 (1846); *Fladung v. Rose,* 58 Md. 13, 25 (1882); and *Michael v. Lucas,* 152 Md. 512, 137 A. 287 (1927). We shall have more to say about *Michael* later. Judge Sloan said for the Court in *Schilbach v. Schilbach,* 171 Md. 405, 407, 189 A. 432 (1937), "A tenancy by the entireties is essentially a joint tenancy, modified by the common law theory that the husband and wife are one person." *Accord Mitchell v. Frederick,* 166 Md. 42, 48, 170 A. 733 (1934). Professor Kepner states, "One of the most articulate adherents to this point of view is the Maryland court," citing *Schilbach. Id.* at 553.

Professor Kepner, *op. cit.,* states in commenting on the effect of a conveyance to parties as husband and wife who are not legally married:

> The question is not necessarily one of deceit on the part of the grantees. Actually, no less than the five following possibilities may exist with respect to the status of the parties. They are as follows:

> 1. Both parties know that they are not married. Either or both may have a prior undissolved marriage. The parties may or may not undergo a formal ceremony to create the impression that they are married. Perhaps they have property transferred to them as husband and wife to conceal their true status.

> 2. One person conceals the fact that he has been a party to a valid subsisting marriage. The innocent party honestly believes that he is legally married.

3. One of the spouses disappears and remains unaccounted for during a long period of time. Believing that his wandering partner is dead, the abandoned spouse remarries in good faith. The lost spouse then reappears.

4. A husband or wife goes to another jurisdiction and obtains a divorce. Returning to his original domicile, the divorcing party enters into another marriage, relying on the divorce decree. The domiciliary state decrees the foreign divorce to be null and void. The second marriage is necessarily invalid.

5. Property is conveyed to married parties. The marriage is subsequently annulled. Since the marriage is voided, the parties are in the same position as if they had never gone through the marriage ceremony. [*Id.* at 554-55.]

See also Annot., 83 A.L.R.2d 1051 (1962), and the cases collected in its later case service. Professor Kepner's analysis should be borne in mind as we later examine the Maryland cases. He further stated:

An analysis of the cases involving an attempt to create a tenancy by the entirety to unmarried parties reveals that they involve conveyances with granting clauses that describe the grantees in one of four different manners:

1. The grantor conveys to *A* and *B*. The instrument does not describe the parties as husband and wife, although they and the grantor may believe this to be the true status.
2. A seller transfers to *A* and *B* as husband and wife.
3. The conveyance runs to *A* and *B* as tenants by the entirety.

 4. *A* and *B* are named as tenants by the entire-
 ty with the right of survivorship.

[*Id.* at 555-56.]

Of the third category, in which this case falls, he says:

 A conveyance to two persons as tenants by the
 entirety is the third type of transfer construed by
 the courts. Reasoning that the parties intended to
 provide for survivorship when they executed an
 instrument identifying the grantees as tenants by
 the entirety, courts have concluded that a joint
 tenancy comes nearest to achieving this result. In
 Maryland, Massachusetts and Pennsylvania cases
 have been adjudicated in accordance with this
 theory. [*Id.* at 557.]

*Mitchell,* 166 Md. 42, which we shall later discuss, is the
Maryland case he cites. Professor Kepner concludes by
stating:

 Despite that fact that the common law concept of
 a tenancy by the entirety has been substantially
 modified in many jurisdictions, in at least two
 respects it remains unaltered. In the first place, the
 right of survivorship remains an incident of this
 type of concurrent ownership. Secondly, an estate
 by the entirety may only exist between a husband
 and wife.

 In the event a grantor attempts to create a
 tenancy by the entirety in grantees ostensibly
 husband and wife but who actually are not married,
 the interest acquired will depend on the language
 of the granting clause. The results are as follows:

 1. A grant to two unmarried parties by name
 will create a tenancy in common.
 2. A conveyance to two unmarried parties as
 tenants by the entirety will establish a joint
 tenancy. The cases holding otherwise ignore
 that parties' implied preference for
 survivorship.

3. A transfer to unmarried parties as tenants by the entirety with the right of survivorship will constitute the grantees joint tenants.

4. A deed running to unmarried parties as husband and wife transfers to each a tenancy in common, notwithstanding the parties' belief that they are married and despite the fact that a right of survivorship would have been created had the marriage been valid. The grantee's good or bad faith is immaterial.

It is submitted where the evidence discloses that the grantees honestly, although mistakenly, believe that they are legally married, a conveyance to them as husband and wife, or as tenants by the entirety, is a clear expression of intention to provide for survivorship. Upon the failure of the tenancy by the entirety, the parties should be deemed to hold as joint tenants. Only this form of joint ownership can fully effectuate the grantor's expressed desire to provide for survivorship. [*Id.* at 558.]

The Maryland cases are consistent with his conclusions.

In *Michael*, 152 Md. 512, a leasehold interest in land was assigned "to Joseph Kuntz and Emily H. Kuntz, his wife, as tenants by the entireties, the survivor of them, his or her personal representatives and assigns." She was not the wife of Kuntz. Subsequent to his death his administratrix filed a bill for sale of the leasehold estate in lieu of partition. Her theory was that these persons held the property acquired as tenants in common and that the undivided interest of Kuntz passed to his administratrix upon his death. Reliance was placed upon the statutory provision relative to the creation of joint tenancies. The administratrix contended that because the words "joint tenancy" did not appear in the conveyance that under the statute the estate thereby created was a tenancy in common. Judge Sloan said for the Court:

We do not understand these words to be essential to create a joint tenancy. If the language used

accurately describes a joint tenancy, there will be a compliance with the statute. The chief incident of a joint tenancy is survivorship and the conveyance in the present case is to the grantee or "the survivor of them." 1 *Tiffany on Real Property,* 372; *Apgar v. Christophers,* 33 Fed. 201; *Coster v. Lorillard,* 14 Wendell (N.Y.), 265. "By the use of the term 'survivor' in the grant, the intention is clearly indicated that there shall exist the right of survivorship." *Craft v. Wilcox,* 4 Gill, 506.

\* \* \*

It can be said here, as was said by Judge Pattison in *Murray v. Kerney,* 115 Md. 517 [, 81 A. 6 (1911)]: "It is not difficult to ascertain the meaning of said paper-writing." It is manifest that by the deed, which is the subject-matter of this case, it was intended that the grantees should have the property while both lived and at the death of either it should pass to the survivor. [*Id.* at 514.]

In *Mitchell,* 166 Md. 42, the children of a deceased woman brought a bill of complaint against an individual who had been united in marriage with her as her second husband, their child, and the administrators of the decedent's estate. The complainants disputed the validity of the marriage. A demurrer to the bill was overruled, from which order an appeal was taken. Six deeds were involved. In three of the deeds by their terms the land was conveyed to the pair as tenants by the entirety and to the survivor expressly. The other three deeds described the holdings as by the entirety but did not mention survivorship. Chief Judge Bond said for the Court, "Invalidity in the marriage to Mitchell, if proved, could affect only three of the six properties conveyed to the pair as tenants by the entireties, for it is conceded that the three conveyances which expressly attached the right of survivorship did carry the right to Mitchell surviving, that the properties now belong to him, and that the complainants

show no right to share in them." *Id.* at 46-47. He pointed out for the Court:

> Classification does not, however, solve the problem in this case, for it is no part of the purpose of the law to restrict a grant to a pattern: that is, to confine it within the ordinary limits of one of the three classifications of cotenancy without regard to what the parties may desire and intend. The immunities of a tenancy by the entireties can be enjoyed only by a lawfully married pair; but any other incidents may be included in any other plural ownership if the parties so intend. It has already been seen that a tenancy in common may have attached to it the right of survivorship which is ordinarily a characteristic of a joint tenancy. In this very case it is conceded that whatever the tenancy which has resulted from the attempt to convey by the entireties, the expression of the purpose to attach the right of survivorship in three instances is effectual. *Michael v. Lucas, supra.* The lawful intention of the parties, in short, is to be carried out, and they are not to be deprived of freedom to convey whatever they wish, in order to conform to one of the more usual forms and classifications of ownership. [*Id.* at 48-49.]

He pointed out, "Specifying tenancy by the entirety is the full equivalent of declaring in so many words that there shall be a right of survivorship." *Id.* at 50. The Court concluded "that notwithstanding the averments of the bill, the right of survivorship may be in the respondent Alexander Mitchell in all of the six lots of ground, or any of them, placed in the names of himself and the mother of the complainants . . . ." *Id.* at 51.

*Donnelly,* 198 Md. 341, is greatly relied upon by the Smith children for their proposition that the deed here creates a tenancy in common because it does not specifically refer to a right of survivorship. It arose in a posture different from

the case at bar. Its holding is in no way inconsistent with the holdings in *Michael,* 152 Md. 512, or *Mitchell,* 166 Md. 42. In it there was a marriage followed by an agreement between those parties and a building association for the purchase of certain real estate. The woman was described in the agreement as "his wife." At the time of the marriage she apparently believed her first husband was dead. In a subsequent divorce proceeding Donnelly produced her first husband. The marriage between the Donnellys was "declared null and void." Mr. Donnelly then brought a bill seeking to have the property the parties had been buying declared to be free of any claim by the woman. Judge Grason said what the Court there had was "a case where a man and a woman went through a marriage ceremony, each thinking, in good faith and without a semblance of fraud, that they occupied a status that validly permitted them to marry, but years afterwards, by a decree of court, it was determined that at the time of the marriage the woman had a husband living, and that neither she nor her husband had procured a divorce." *Id.* 198 Md. at 348. It was in this context that the Court held that as a result of the decree declaring the marriage void the parties became possessed of the land as tenants in common. Contrary to the arguments of the Smith children here, the Court does not appear to have made its determination upon the basis of the absence in the conveyance of words indicating a right of survivorship. The effect of the Court's holding in *Donnelly* was a determination that the joint tenancy had been severed by the divorce decree so that the parties held as tenants in common, just as a conveyance by one of two joint tenants would convert a joint tenancy into a tenancy in common.

The Court in *Donnelly* distinguished the case from *Hutson v. Hutson,* 168 Md. 182, 177 A. 177 (1935). In that case Hutson possessed real estate which through straw conveyances was placed in the names of "Jospeh E. Hutson and Florence V. Hutson, his wife, as tenants by the entireties, their assigns, the survivor of them, and such survivors, heirs, etc." It was determined that no valid divorce decree had been obtained by Florence V. Hutson

from Dodson R. Wagner, of which she was cognizant at the time of the marriage to Hutson. Upon his learning of the prior existing marriage he brought a bill to have the marriage to Florence V. Hutson annulled. It was annulled, from which decree no appeal was taken. He then sought a determination that the straw deeds were null and void. He claimed "that he would not have conveyed to [this woman] any interest in his property had he not *bona fide* believed she was his lawful wife . . . ." 168 Md. at 187. The Court found that it "c[ould] place no construction upon the deeds, favorable to [the woman], which would not at the same time work gross injustice to [Hutson]." *Id.* at 189. Accordingly, it affirmed a decree setting aside the two deeds.

Our last such case is *Lopez v. Lopez,* 250 Md. 491, 243 A.2d 588 (1968). Lopez was married in Cuba in 1921 prior to his emigration to the United States in 1929. He married again in 1946. In 1947 and 1952 land was bought for which it was claimed he provided the full consideration. It was titled in the name of him and his second wife as tenants by the entirety. In 1954 his first wife arrived in the United States and divorced him. He and the second wife then remarried. The case reached us in litigation which arose after his death. An attempt was made on behalf of his estate to claim the land conveyed to him and his second wife as tenants by the entirety prior to their valid marriage. The scond wife "while admitting that tenancies by the entirety were not created, contend[ed] that an intent to create rights of survivorship ha[d] been shown, sufficient to vest title in [her], as the survivor of [Lopez]." Judge Singley said for the Court, "[W]e regard [Lopez'] attempt to take title as tenants by the entirety as a sufficient showing of his intention to create a right of survivorship, and the presumption favoring a tenancy in common must yield to a joint tenancy." *Id.* at 511.

The case at bar is closely similar to *Coleman v. Jackson,* 109 U.S. App. D.C. 242, 286 F.2d 98 (1960), *cert. denied,* 366 U.S. 933 (1961). In that case Jackson and Alice R. Coleman, also known as Alice R. Jackson, lived together in the District of Columbia, ostensibly as man and wife, from 1926 until his

death in 1957. Although they had eleven children, they never were legally married. They took title to a piece of land in the District of Columbia while he had a wife living. It was conveyed to "Thomas H. Jackson and wife, Alice R. Jackson ... as Tenants by the Entirety." He died intestate. She claimed the conveyance created in her a right of survivorship and that she became the sole owner of the realty. His administrator "and members of his legitimate family" claimed that a tenancy in common was created and that on Jackson's death they were entitled to his share. The District of Columbia statute provided:

> Every estate granted or devised to two or more persons in their own right, including estates granted or devised to husband and wife, shall be a tenancy in common, unless expressly declared to be a joint tenancy . . . .

Justice Reed, sitting by special assignment, reasoned for the court:

> What the parties intended in this case is clear if we accept the words of the conveyance as representing the intention of the parties. This must necessarily be done where, as here, no contrary evidence of intention exists. The words used, "tenants by the entirety," mean in law that the parties wanted the property to be inalienable by either during their joint lives, and on the death of one they wished the survivor to take all. Because they were not married and because inalienability is an incident only of estates by the entireties, the law denies them the first of these wishes. But it does not follow that it must deny them the second as well. Survivorship, the salient feature of joint tenancy, is also perhaps the most important feature of tenancy by the entireties; the other major attibute of the latter estate, inalienability, is in part only a means to protect the right of the survivor to take. Although there are differences between joint tenancies and tenancies by the entireties, the

marked similarities between the two forms of cotenancy cannot be ignored .... The intention of survivorship manifested in the deed can best be effected by declaring the cotenants in this case to have been joint tenants. Alice, a surviving joint tenant, became sole owner of the property upon the death of Thomas. [*Id.* at 102-03.]

We adopt that reasoning which is entirely in accord with the prior Maryland cases. It clearly was not the intent of the parties here that title be held as tenants in common. The use of the language as "tenants by the entirety" in the deed signifies an intention that there be a right of survivorship. Hence, we hold that the conveyance here created a joint tenancy.

*Judgment affirmed; appellants to pay the costs.*