606 A.2d 208

John Robert DOWNING

v.

**Bonnie Lynn DOWNING, Personal Representative of the Estate of Helen Downing Cullison.**

No. 110, Sept. Term, 1991.

Court of Appeals of Maryland.

May 12, 1992.

J. Michael Earp, Westminster, for appellant.

Elwood E. Swam, Hampstead, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

In 1948, Helen Downing (Helen) and her husband John Downing (John Sr.) bought an 88–acre farm in Carroll County, Maryland. They had two children, John Robert Downing (John Jr.) and Bonnie Lynn Downing (Bonnie). When John Sr. died, Helen became the sole owner of the family farm.

On August 7, 1972, several years after John Sr.'s death, Helen conveyed the farm to a "straw man,"[1] Stanford Hoff, "his heirs and assigns forever in fee simple." Hoff immediately reconveyed the property "unto HELEN S. DOWNING, widow, and JOHN ROBERT DOWNING, as joint tenants, their heirs and assigns, forever in fee simple." Language in the habendum clause was almost identical to that of the granting clause, conveying "unto the said HEL-

---

1. "The old common law rule that a grantor could not create a joint tenancy by conveying to himself and another (or others), or by conveying an undivided interest to another, generally has been evaded by conveying the entire estate to a third party 'straw man' who, by prearrangement, then conveys the estate back to the entire group of intended joint tenants (including the grantor)." Roger A. Cunningham, *The Law of Property*, § 5.3, at 206 (1984). *But see* Maryland Code (1974, 1988 Repl.Vol., 1991 Cum.Supp.), Real Property Article, § 4–108 abolishing the need for straw deeds in certain cases.

EN S. DOWNING and JOHN ROBERT DOWNING, as joint tenants, their heirs and assigns forever in fee simple."

Prior to the conveyances of August 7, 1972, Helen, assisted by John Jr., negotiated an oral agreement with John Myers (Myers) whereby Myers was permitted to grow and harvest crops on arable portions of the property in exchange for payments to Helen. This agreement did not entitle Myers to exclusive possession of the farm, only to raise and harvest crops on the land. The deed to Hoff is silent about this arrangement, as is the deed from Hoff to Helen and John Jr. Following the August 1972 conveyances, with John Jr.'s concurrence, Helen continued to receive all of the farm rent payments from Myers. From time to time John Jr. consulted with Myers about his cultivation methods to make sure the land was being properly cared for. Myers continues to raise crops there to this day.

Helen subsequently married Gordon Cullison. On October 31, 1985, Helen and John Jr. executed a mortgage of the property in favor of the Union National Bank. The mortgage states that the property, "by Deed of Stanford Hoff, dated August 7, 1972, and recorded among the Land Records of Carroll County ... was granted and conveyed unto Helen S. Downing and John Robert Downing *as joint tenants;* the said Helen S. Downing being now known as Helen S. Cullison." (Emphasis added).

Helen died on January 15, 1987. In her will, she made specific bequests to various family members, including her second husband and her descendants, but made no mention of the farm. The residue of the estate was to go half to John Jr. and half to Bonnie.[2] On December 29, 1988,

---

**2.** Helen's will provides, in part,
"(17) I give, devise and bequeath unto my son, John Robert Downing, should he survive me, the one-half ($\frac{1}{2}$) of all the rest and residue of my estate; but in the event he should not survive me, then his said share to go to his children, then living, share and share alike; and
(18) I give, devise and bequeath unto my daughter, Bonnie Lynne Downing, should she survive me, the remaining one-half ($\frac{1}{2}$) of all

Bonnie, as personal representative of her mother's estate, filed a complaint seeking to have the August 7, 1972 deed construed as creating a tenancy in common. Under such an arrangement, the family farm would not go solely to her brother, but an undivided one-half would be placed in her mother's estate.

John Jr. received a copy of this complaint. When he did not file an answer, Bonnie was granted an order of default. John Jr. received notice of this order. Testimony was then taken by a master to determine what relief, if any, Bonnie would be entitled to. At the hearing before the master, John Jr. appeared with counsel, testified, and introduced evidence. The master concluded that no joint tenancy ever came into being because "[t]he chief incident of a joint tenancy is the right of survivorship. Such is not spelled out in this deed." The master also noted that the mortgage and farming arrangement would have destroyed a joint tenancy in any event.

The circuit court heard the matter on John Jr.'s exceptions to the master's report. The circuit court concluded that the deed created a joint tenancy but that the subsequent mortgage executed by both joint tenants severed the joint tenancy. Therefore, the court agreed with the master that the family farm is "owned by John R. Downing and the Estate of Helen S. Downing (Cullison) as tenants in common." John Jr. appealed from this order to the Court of Special Appeals. We granted certiorari on our own motion prior to consideration by the Court of Special Appeals.

In this case we must resolve two questions: (1) Is a conveyance using the language "as joint tenants, their heirs and assigns, forever in fee simple" sufficient to create a joint tenancy? (2) If so, did either the farming agreement with Myers or the execution of a subsequent mortgage by both Helen and John Jr. sever this joint tenancy?

---

the rest and residue of my estate; but in the event she should not survive me, then her said share to go to her children, then living, share and share alike."

■ As a preliminary matter, Bonnie argues that John Jr., being subject to an order of default below, should not be permitted to prosecute this appeal. The record, however, reflects no objection to John Jr.'s raising the joint tenancy issue at the hearing before the master, nor did Bonnie ever object to John Jr.'s "Exceptions to Master's Report and Recommendation" or to the circuit court hearing John Jr.'s exceptions. Maryland Rule 8–131(a) states, in part, "[o]rdinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court...." Therefore, because no objection appears on the record, this issue is not properly before this Court.

Furthermore, Bonnie never sought a judgment by default as provided by Maryland Rule 2–613(e).[3] She sought only

---

3. Maryland Rule 2–613 is entitled "Default Judgment" and reads as follows:

"(a) **Order of Default.**—If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

(b) **Notice.**—Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

(c) **Motion by Defendant.**—The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(d) **Disposition of Motion.**—If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

(e) **Entry of Judgment.**—If a motion was not filed under section (c) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (b) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by

an order of default, which was granted. Subsequent to that order, and without objection, John Jr. participated in the hearings and was permitted to raise the substantive issues that are now before this Court. The only judgment entered was not a default judgment but was an order deciding the substantive issues; John Jr. certainly has the right to appeal that order. *See Banegura v. Taylor*, 312 Md. 609, 618, 541 A.2d 969, 973 (1988). Any failure by John Jr. to move to strike the order of default has been waived because there was no objection to John Jr.'s raising the substantive issues in the proceedings below, and the trial court's decision on the merits is properly before us.

Bonnie argues that no valid joint tenancy ever came into being by the deed of August 7, 1972. Because the primary dispute in the instant case is whether a joint tenancy was ever created, it is advisable to review briefly the nature of a joint tenancy.

 Joint tenancy means that each joint tenant owns an undivided share in the whole estate, has an equal right to possess, use, and enjoy the property, and has the right of survivorship. 2 Herbert T. Tiffany, *The Law of Real Property* §§ 418, 419 (Basil Jones ed., 3d ed. 1939). At common law, there were four unities necessary for the creation of a valid joint tenancy. Under traditional common law principles,

> "[E]ach joint tenant had an undivided interest as an individual which was equal to the interest of every other cotenant. Since they were seised together as a fictitious unity, there was necessarily a community of interest which required their individual interests be equal in all respects. The later books recite that four unities were

---

evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

(f) **Finality.**—A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted."

essential to a joint tenancy, those of time, title, interest and possession. The requirement of the four unities expresses in an artificial way the basic idea that cotenants hold as a unity with a community of interest between them, since if they take as one they must take at the same time, by the same deed or feoffment, and must have interests which are identical."

*Alexander v. Boyer,* 253 Md. 511, 519, 253 A.2d 359, 364 (1969) (quoting 2 Thomas A. Atkinson et al., *American Law of Property,* § 6.1, at 4 (A. James Casner ed., 1952)).

■ For the purposes of this case, the crucial distinction between a joint tenancy and a tenancy in common is the right of survivorship identified with a joint tenancy. 4A *Powell on Real Property* ¶ 615[1] (Castleman rev. 1990). Therefore, if we determine that a joint tenancy was created, the family farm passes to John Jr. as surviving joint tenant. If we find that a joint tenancy was not created, the deed establishes merely a tenancy in common and Helen's interest in the family farm will become part of her estate.

"At common law it was presumed that a conveyance to two or more persons created a joint tenancy." *Alexander v. Boyer,* 253 Md. at 518, 253 A.2d at 363. Chapter 162 of the Acts of 1822 reversed the common law and declared joint tenancy to be disfavored in Maryland with the following words: "That no deed, devise or other instrument of writing which may hereafter be made or executed, shall be construed to create an estate in joint tenancy, unless in such deed, devise, or other instrument of writing, it is expressly provided that the property conveyed by such deed, devise, or other instrument of writing, is to be held in joint tenancy." Chapter 162's embodiment in effect at the time of the August 7, 1972 deed was Maryland Code (1957, 1972 Repl. Vol.), Article 50, § 9, which provided, "No deed, devise or other instrument of writing shall be construed to create an estate in joint tenancy, unless in such deed, devise or other

instrument of writing it is expressly provided that the property hereby conveyed is to be held in joint tenancy." [4]

Bonnie tells us that she has found no Maryland decision that "flatly states that the term, 'joint tenants,' standing alone, is sufficient to overcome the disfavor with which joint tenancies are viewed in Maryland." This Court has held that in the case of a joint tenancy, it must be so clearly expressed as to leave no doubt about the parties' intention. *Register of Wills v. Madine*, 242 Md. 437, 444, 219 A.2d 245, 249 (1966), quoting *Hammond v. Dugan*, 166 Md. 402, 409, 170 A. 757, 760 (1934). However, we believe that when a deed uses the words "joint tenants," as does the instrument in the instant case, this language can be sufficient to establish that the property granted is to be held in joint tenancy. [5]

---

4. Chapter 162 was recodified most recently as Md.Code (1974, 1988 Repl.Vol.) Real Property Art., § 2–117. The current statute provides, "No deed, will, or other written instrument which affects land or personal property, creates an estate in joint tenancy, unless the deed, will, or other written instrument expressly provides that the property granted is to be held in joint tenancy."

5. Bonnie does not argue that the words "heirs and assigns" are at odds with the right of survivorship associated with a joint tenancy and therefore create an ambiguity. The Court of Special Appeals, in *Gardner v. Gardner*, 25 Md.App. 638, 335 A.2d 157, *cert. denied*, 275 Md. 748, (1975), concluded the words "heirs and assigns" are not ambiguous. Chief Judge Robert C. Murphy of this Court, specially assigned to the intermediate appellate court in the *Gardner* case, wrote, "[t]he words are merely descriptive of the estate conveyed—a fee simple. . . . The words 'heirs and assigns,' as one New York court has noted, 'are the usual technical words of conveyance granting a title in fee simple. At common law they were essential to the conveyance. They are unnecessary for that or any purpose . . . but when used in wills or deeds such is their meaning. They are merely words of limitation used to describe the nature of the estate given. . . .'" *Id.* 25 Md.App. at 644, 335 A.2d at 161 (quoting *In re Denari's Will*, 165 Misc. 450, 300 N.Y.S. 1279, 1283 (1937)).

The intermediate court further stated, "[t]hus, in *Craft v. Wilcox*, 4 Gill. 505 (1846), a conveyance to 'Henry Wilcox and wife, and their heirs and assigns, and the survivor of them' (although not creating a joint tenancy) was held to establish a right of survivorship. In *Wolf v. Johnson*, 157 Md. 112, 145 A. 363 (1929), a deed granting property to a husband and wife 'as joint tenants, their heirs and assigns in fee simple' to have and to hold 'as joint tenants with the common law

In *McManus v. Summers*, 290 Md. 408, 430 A.2d 80 (1981), we held that although joint tenancies are disfavored, a clear manifestation of intent to create a joint tenancy will be effectuated. In *McManus*, Dollie Collins went to Texas to procure a divorce, later found to be invalid. Her husband, O. Thaxter Smith, believing the divorce to be valid, married Mary Smith. They subsequently purchased real estate in Montgomery County. "The deed referred to the 'parties of the second part' as 'O. THAXTER SMITH and MARY R. SMITH, his wife....' The land in question was conveyed 'unto the said parties of the second part, in fee simple, as TENANTS BY THE ENTIRETY....'" *Id.* at 409, 430 A.2d at 81 (footnote omitted). Upon the husband's death, his children by the first marriage argued that because the subsequent marriage was invalid, this property was owned as tenants in common. We reasoned that

> "'a tenancy by the entirety cannot be established unless the grantees are legally married.' ... It is true that under the predecessor of [Real Property Article] § 2–117 joint tenancies have been viewed with disfavor.... Although viewed with disfavor, it must be remembered that as to the formula for creation of joint tenancies ... '[t]he [statutory] requirement is only one of clear manifestation of intention, not one of particular words ...'" (citations omitted)

*Id.* at 412–413, 430 A.2d at 82–83. We held that "a conveyance to two persons described in that deed as husband and wife, which conveyance purported to be to them as tenants by the entirety, created a joint tenancy if the grantees in fact were not legally married." *Id.* at 409, 430 A.2d at 80–81. *McManus* concluded that a right of survivorship exist-

---

right of survivorship' was held to create a joint tenancy. In *Marburg v. Cole*, 49 Md. 402 (1878), a conveyance to 'Ann Rebecca Cole and Abraham Cole, the husband, their heirs and assigns, in fee' was said not to create a tenancy in common but rather to establish a tenancy by the entireties with a right of survivorship." *Id.* 25 Md.App. at 644–645, 335 A.2d at 161.

ed even when no right of survivorship was mentioned in the deed because the parties' intent was clear.

Helen and John Jr., in the instrument now before this Court, indicated that they intended to hold the property as joint tenants by language used in both the granting clause and the habendum clause. By using the words, "as joint tenants," they satisfied the requirements of the Real Property Article. The Court need look no further than the deed itself to conclude that a valid joint tenancy came into being.[6]

■ We now turn to the unities of time, title, interest, and possession required for the existence of a valid joint tenancy. Bonnie, in her brief, concedes that the unities of time and title are satisfied, but she argues that letting Myers farm the land destroyed the unities of interest and possession. Bonnie contends that because of the pre-existing farming agreement with Myers, the unity of interest was never met, and if met, was destroyed by the next annual renewal of the "lease" to Myers. Bonnie also argues that because the farming rights had been assigned to Myers, John Jr.'s right to possession was frustrated, and the unity of possession was destroyed.

■ The simple answer to Bonnie's contention with respect to the unity of interest is that the mere fact that Helen might have given Myers the right to farm the land does not preclude a joint tenancy. What Helen conveyed to Hoff and Hoff reconveyed to Helen and John Jr. was the fee simple estate subject to Myers' right to farm. Regardless of whether we categorize this farming right as a lease, license, or profit, it would not preclude a joint tenancy. A joint tenancy can be created in an estate less than an unencumbered fee simple estate. *See Michael v. Lucas,* 152 Md. 512, 137 A. 287 (1927) (Court held deed created joint

---

6. Had the author of the deed employed such language as, "as joint tenants with the right of survivorship" or "as joint tenants and not as tenants in common," the intent to create a joint tenancy would have been more readily apparent. *Cf. McManus v. Summers,* 290 Md. 408, 409 n. 1, 430 A.2d 80, 81 n. 1 (1981).

tenancy in leasehold property); 2 *American Law of Property* § 6.1 at 6 (1952) ("A joint estate is valid even though an estate less than a fee is conveyed to the tenants.").

Nor does Helen's receipt of the rents, with John Jr.'s consent, destroy the unities of interest or possession. *See* Roger A. Cunningham et al., *The Law of Property* § 5.3 n. 38.5 (Supp.1987). "[C]ourts have frequently held that the 'unity of possession' may exist even though by express agreement between the joint tenants one of them retains the exclusive right to the possession of, and/or income from, the jointly owned property." *See also Porter v. Porter,* 472 So.2d 630, 633 (Ala.1985), and cases cited therein: "The mere temporary division of property held by joint tenants, without an intention to partition, will not destroy the unity of possession and amount to a severance of the joint tenancy."

The circuit court was wrong in concluding that the mortgage on the property by Helen and John Jr. destroyed the joint tenancy. A mortgage by a *single* joint tenant does destroy the unities of interest and title and this destroys the joint tenancy. *See Eder v. Rothamel,* 202 Md. 189, 192, 95 A.2d 860, 862 (1953) and cases cited therein. However, where all joint tenants join in the mortgage, none of the unities are destroyed, and there is no reason why the joint tenancy should not continue. We hold that a mortgage executed by all joint tenants does not sever the joint tenancy. *See Gardner v. Gardner,* 25 Md.App. 638, 645–46, 335 A.2d 157, 161–62, *cert. denied,* 275 Md. 748 (1975) and authorities cited therein; *Illinois Public Aid Commission v. Stille,* 14 Ill.2d 344, 153 N.E.2d 59, 63–64 (1958); *Estate of Kotz,* 486 Pa. 444, 406 A.2d 524, 532 (1979).

For the above reasons we conclude that a joint tenancy was formed by the deed of August 7, 1972. Furthermore, we conclude that the acts of the joint tenants—including the granting of farming rights to Myers and the subsequent execution of a mortgage by both joint tenants—did not sever this relationship.

JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR AN ORDER CONSISTENT WITH THIS OPINION. COSTS ARE TO BE PAID BY APPELLEE.