STEBBINS-ANDERSON COMPANY, INC. *v.* BOLTON, ATTORNEY ET AL.
(Two Appeals in One Record)

[No. 10, October Term, 1955.]

184

*Decided November 7, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William R. Price, Jr.*, with whom were *Harry E. Karr* and *John Wesley Smith* on the brief, for the appellant.

*Walter R. Haile* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Baltimore County, in equity, overruling exceptions to an auditor's account in a mortgage foreclosure case and ratifying the account. It is stipulated that the decision shall also apply to another claim of the appellant in another foreclosure case where the facts are similar. The appellant, a judgment creditor in the amount of some $8,800, had contended that it was entitled to the entire surplus from the mortgage sale, over and above the mortgage debt and other charges, in the amount of $2,379.77, to the exclusion of mechanics' lien claims totalling $2,964.27. The appellant was one of the claimants to the extent of $757.22. The auditor disallowed the judgment claim and apportioned the surplus between the mechanics' lien claimants. The appellant duly excepted to the account, asserting the priority of its judgment.

The facts are virtually undisputed. It was shown that Edgar W. Weal, Jr. and wife purchased from George H. Suter and wife lots numbered 50, 51, 52 and 53 in a subdivision known as Catonsville Manor, on September 2, 1952, for the sum of $750. A deed was executed on September 18, and duly recorded. On September 30, 1952, the Weals entered into a contract of sale at the same price to Scheide Construction Company, and another contract of sale from the construction company to the Weals whereby the company agreed to construct on the property a bungalow according to plans and specifications, at a price of $13,250, of which $2,750 was acknowledged to have been paid, and the balance of $10,500 was to be financed by a mortgage. The construction company agreed to complete the house in a workmanlike manner,

and to convey the lot and improvements to the Weals upon completion. The Weals paid $2,000 to the construction company at the time the contracts of sale were executed. These contracts were not recorded. On January 26, 1953, the Weals executed a deed to the construction company, which was duly recorded, and on the same day joined with the construction company in a $9,000 mortgage to The Towson Building Association, Inc., which was duly recorded. Presumably the money was paid to the construction company for use in the building operation. Materials were delivered to the site and building began on February 5, 1953. On May 21, 1953, the appellant obtained from the construction company a mortgage for $8,800, payable in three months, on certain other lots and houses owned by it, but not upon the lots here in question. On the same day it obtained a confessed judgment note from the construction company in the same amount. On or about June 22 the construction work stopped. On August 6 the appellant entered the judgment by confession. On September 4, 1953, the construction company informed the Weals that it had abandoned the work and conveyed the property to the Weals without any further payment by them. The house being uncompleted, the Weals ordered materials that were duly delivered and attempted to complete the work. They did not learn of the judgment until after the deed to them was recorded. Mechanics' liens were thereafter filed to the extent of $2,964.27, most of these claims being for materials furnished after September 4. On March 29, 1954, The Towson Building Association, Inc. instituted foreclosure proceedings.

The legal principles involved seem to be well-settled. It is a general rule that the holder of an equitable title or interest in property, by virtue of an unrecorded contract of sale, has a claim superior to that of a creditor obtaining judgment subsequent to the execution of the contract. *Caltrider v. Caples*, 160 Md. 392, and cases cited. For the purposes of this rule it appears to be quite immaterial whether the credit was extended prior

or subsequent to the execution of the contract. Cf. *Kinsey v. Drury,* 146 Md. 227, 232, *Cramer v. Roderick,* 128 Md. 422, 429, and *Valentine v. Seiss,* 79 Md. 187. "The effect of such a contract is to vest the equitable ownership of the property in the vendee, subject to the vendor's lien for unpaid purchase money, and to leave only the legal title in the vendor pending the fulfilment of the contract and the formal conveyance of the estate. The right of the vendee to have the title conveyed upon full compliance with the contract of purchase is not impaired by the fact that the vendor, subsequently to the execution of the contract, incurred a debt upon which judgment was recovered. A judgment creditor 'stands in the place of his debtor, and he can only take the property of his debtor subject to the equitable charges to which it is liable in the hands of the debtor at the time of the rendition of the judgment'." *Kinsey v. Drury, supra.* This has been the law at least since the decision in *Hampson v. Edelen,* 2 H. & J. 64 (1807). Except where modified by statute it is the rule in other states. See Note 87 A. L. R. 1505, and 3 *American Law of Property,* § 11.29. It is an application of the familiar doctrine of equitable conversion. Cf. *Skinner & Sons' Co. v. Houghton,* 92 Md. 68, 86. The rule does not depend upon actual notice to the creditor, although it is argued that that was the factual situation in the *Caltrider* case, *supra.* "* * * a judgment creditor is not in the position of a *bona fide* purchaser, and his claim is subject to prior, undisclosed equities. 'He is neither in fact nor in law a *bona fide* purchaser, and must stand or fall by the real, and not the apparent rights of the defendant in the judgment'." *Kolker v. Gorn,* 193 Md. 391, 398, and cases cited.

The appellant seems to contend that the conveyance to the Weals was not made for value, since no money was paid at that time, and there was not a full compliance with their part of the bargain. It is stated in *Tiffany, Real Property* (3 ed.), § 1583, p. 710, that "if part only, or if none, [of the purchase money] has been paid, the vendor's title is, by the weight of authority, subject to

the lien, which is, however, liable to be divested by the payment of whatever remains due by the vendee." It would seem that the equitable title would be unaffected by the non-payment, even though the creditor might be in a position to assert a claim against the balance due to the vendor. But in the instant case the vendor had already received the down payment and the proceeds of the mortgage, and was in default in its obligation to complete the house. We cannot hold that the Weals were not entitled to the conveyance without further performance on their part, particularly since it appears that the cost of completion far exceeded any balance that might otherwise have been payable. Since the judgment creditor stands in the shoes of the judgment debtor, its rights cannot rise above the source.

The appellant also challenges the *bona fides* of the conveyance from the Weals to the judgment debtor, on the ground that this was for the express purpose, and had the effect, of enabling the latter to obtain credit on the faith of the apparently unencumbered title in his name. It is not without significance that the mortgage disclosed on its face and afforded constructive notice of an apparent interest in the Weals, at least to the extent that they joined in the mortgage and made themselves responsible for its payment. Moreover, the appellant did not include this property in the mortgage from the construction company executed on the same date as the judgment note, which they might easily have done, if they intended to rely upon the ostensible title in the name of the construction company. But in any event, we think the appellant is in no stronger position because the title passed to the construction company from the Weals than if it had passed directly from the Suters. In either case the creditor was chargeable with notice that under established legal principles the general lien of his judgment would be subordinate to undisclosed equities in specific properties standing in the name of the debtor. We think the transfer of title was not such a breach of good faith as to bar the Weals from asserting their equitable title.

The appellant strongly relies upon Code (1951), Art. 66, sec. 1 as barring reliance upon the contract of sale, because it was not recorded. We think this section is not applicable. If we assume, without deciding, that the contract of sale could have been recorded, there is no statute that makes its validity depend upon recording. The section relied on deals with the failure to record an instrument in the nature of a mortgage "operating as a defeasance" of a recorded deed. We are referred to no case holding that a contract of sale falls in this category, although the statute has been in effect since the adoption of Ch. 203, Acts of 1825. The statute was not applied in any of the cases heretofore cited, and it has been rather strictly construed. Cf. *Snowden v. Pitcher,* 45 Md. 260, 267. By its terms, the statute deprives the vendee of any benefit or advantage from the recording of the deed unless the instrument "operating as a defeasance of the same" be also recorded. Failure to record the limiting instrument deprives the deed of its legal effect in affording constructive notice of its contents to subsequent *bona fide* purchasers. *Winakur v. Sapourn,* 156 Md. 662, 672. But it is valid as between the parties, *Harrison v. Morton,* 87 Md. 671, 674, *Owens v. Miller,* 29 Md. 144, 159, and it would seem that it is valid as against parties claiming through the vendee in reliance upon the deed. The case of *Hoffman v. Gosnell,* 75 Md. 577, relied upon by the appellant, does not hold to the contrary. It was not there held that the failure to record a deed of trust in the nature of a mortgage made the prior deed void, nor was it held that the deed of trust operated as a defeasance. It was held that the failure to record the deed of trust or mortgage within the time prescribed by law made it ineffective as against creditors of the grantor who became such between the date of the deed of trust and the date it was recorded, under what is now Code (1951), Art. 21, sec. 24. The contest was between the creditor beneficiaries of the unrecorded deed of trust and creditors for whose benefit a subsequent deed of trust was executed and recorded. We think the case is readily distinguishable.

In the view we take of the case, it is unnecessary to discuss the appellees' contention that regardless of the standing of the Weals to assert their claim to the property by virtue of the contract of sale and subsequent conveyance, the surplus proceeds of the foreclosure sale were properly apportioned between the holders of the mechanics' liens in priority to the judgment entered subsequent to the commencement of the building, under Code (1951), Art. 63, sec. 15.

*Decree affirmed, with costs.*