935 A.2d 502

**Elizabeth Powers CHAMBERS**

v.

**Michael CARDINAL, et al.**

**No. 2519, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Nov. 8, 2007.

Laura N. Venezia (Scott C. Borison, on the brief), Frederick, for appellant.

Robert A. Scott (Ballard, Spahr, Andrews & Ingersoll, LLP, on the brief), Baltimore, for appellee.

Panel: MURPHY, C.J., and HOLLANDER and SHARER, JJ.

HOLLANDER, J.

In this case, we must decide whether a judgment creditor may levy against real property that was held by the judgment

debtor in joint tenancy, and conveyed by the joint tenants to third parties, pursuant to a contract of sale and deed, before execution on the judgment. Elizabeth Powers Chambers, appellant, was divorced from Richard Chambers on April 17, 2003. On August 18, 2003, in the course of ongoing domestic proceedings, appellant obtained a judgment against Mr. Chambers in the amount of $21,950. By that time, Richard Chambers had remarried. He and his new wife, Alon Chambers (the "Chambers"), owned a parcel of real property at 336 Oak Knoll Drive in Rockville (the "Property"), as joint tenants. The Chambers subsequently entered into a contract dated October 17, 2004, to sell the Property to Michael Cardinal and Jamie M. Gross, appellees. Pursuant to that contract, they conveyed the Property to appellees, by deed, on February 8, 2005. As of then, appellant had no t attempted to execute o n her judgment.

On June 30, 2006, appellant sued appellees in the Circuit Court for Montgomery County, seeking a declaratory judgment that she had a valid and enforceable lien on the Property. The circuit court granted appellees' Motion to Dismiss on November 28, 2006.

This appeal followed. Appellant presents one question: "Did the trial court err as a matter of law when it granted appellee's motion to dismiss?" We answer in the negative and shall affirm the circuit court.

## I. FACTUAL AND PROCEDURAL SUMMARY

On August 18, 2003, several months after appellant and Mr. Chambers were divorced, appellant obtained a judgment against Mr. Chambers in the amount of $21,950. The judgment arose out of the divorce litigation. By the time that appellant obtained the judgment against Mr. Chambers, he had already remarried. It is undisputed that he and his new wife owned the Property in issue as joint tenants. About a year later, on October 17, 2004, Mr. and Ms. Chambers signed a contract of sale for that Property. Pursuant to that con-

tract, they conveyed the Property to appellees, by deed, on February 18, 2005.[1]

Appellant filed suit on June 30, 2006, seeking a declaration that she had a valid lien on the Property. In a motion to dismiss filed on August 3, 2006, appellees argued that "[b]ecause Plaintiff never executed on the Judgment before the Property was transferred to Defendants, the joint tenancy was never severed. Thus, judgment never attached to the Property...."[2] Appellant's opposition to the motion was not filed until August 23, 2006. On that date, the circuit court, without having received appellant's opposition, granted appellees' motion, without prejudice.[3] That order was docketed August 28, 2006. By that time, appellees had filed, on August 24, 2006, a Reply in Further Support of their Motion to Dismiss. On Sept. 6, 2006, appellant moved to vacate the court's order of dismissal. After argument, the court granted the motion to vacate the order of dismissal, and set the case for argument on appellees' motion to dismiss.

The court heard the motion to dismiss on November 28, 2006. In its ruling granting the motion, the court reasoned that "it was too late, that the judgment had not been executed, and that ... the defendant purchasers were bona fide purchasers for value. The joint tenancy now could not be severed." The court relied on *Eastern Shore Building and Loan Corp. v. Bank of Somerset*, 253 Md. 525, 253 A.2d 367 (1969),

---

**1.** Appellant has included in the Record Extract a purported copy of the contract between the Chambers and appellees for the sale of the Property. Appellees protest that appellant's inclusion of the contract was improper because it was not part of the record below. Although appellees are correct that the contract was not placed in the record below, the contract's contents are not relevant to our determination of the appeal.

**2.** In addition, appellees urged dismissal of the Complaint "because Plaintiff's judgment is more than offset by two judgments against her in favor of Mr. Chambers from the same divorce action." They attached copies of the two judgments, totaling $22,550. The circuit court did not reach this argument in its ruling on appellees' motion.

**3.** The circuit court issued its order "[u]pon consideration of the Motion to Dismiss ... and no opposition thereto...."

which the court described as standing "for the proposition that a joint tenancy may not be severed when the property is sold before a judgment is executed."

## II. DISCUSSION

Maryland law provides that real property may be held in joint tenancy, a form of common ownership. Md.Code (2003 & 2007 Supp.), § 2–117 of the Real Property Article ("R.P."). *See also Cooper v. Bikle,* 334 Md. 608, 621–22, 640 A.2d 1120 (1994); *Eder v. Rothamel,* 202 Md. 189, 192, 95 A.2d 860 (1953). In a joint tenancy, each tenant "owns an undivided share in the whole estate, has an equal right to possess, use, and enjoy the property, and has the right of survivorship." *Downing v. Downing,* 326 Md. 468, 474, 606 A.2d 208 (1992).

Under common law, the creation of a joint tenancy is dependent on "the four unities": unity of interest, unity of title, unity of time, and unity of possession. *Id.; see also Eder,* 202 Md. at 192, 95 A.2d 860; *Chew v. Chew,* 1 Md. 163, 171 (1851). That is, the co-owners must have "one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession." *Chew,* 1 Md. at 171; *accord Bruce v. Dyer,* 309 Md. 421, 427, 524 A.2d 777 (1987). Additionally, Maryland provides by statute that a deed, will, or other instrument creating an interest in land does not create a joint tenancy unless the intention to create a joint tenancy is clearly expressed. R.P. § 2–117; *see also Register of Wills for Montgomery County v. Madine,* 242 Md. 437, 443–44 n. 1, 219 A.2d 245 (1966).

A joint tenancy can be terminated in a variety of ways. If the joint tenants convey the real property to another party and no longer own an interest in it, the joint tenancy terminates. *Madine,* 242 Md. at 441–42, 219 A.2d 245. A joint tenancy also ends once there is only a single surviving joint tenant. *Cooper,* 334 Md. at 621, 640 A.2d 1120 ("[I]f property is held by joint tenants and one of the tenants dies,

that individual's interest in the property is immediately extinguished. The surviving joint tenant becomes the sole owner of the property pursuant to the right of survivorship. . . ."). And, a joint tenancy can also be severed if one or more of the four unities is destroyed. *Helinski v. Harford Memorial Hosp., Inc.*, 376 Md. 606, 616, 831 A.2d 40 (2003) (citing *Eder*, 202 Md. at 192, 95 A.2d 860).

▮▮▮ Severance occurs voluntarily if a joint tenant takes an action that destroys one of the four unities. This occurs, for example, if one of the joint tenants sells his interest in the property, *Alexander v. Boyer*, 253 Md. 511, 520, 253 A.2d 359 (1969), or mortgages his interest, *Eder*, 202 Md. at 192, 95 A.2d 860; or leases it, *Alexander*, 253 Md. at 523, 253 A.2d 359. Severance can also occur involuntarily, such as when a court partitions the property by order, *Eder*, 202 Md. at 192, 95 A.2d 860, or when a creditor obtains a judgment against one of the joint tenants *and* levies upon the property in execution on the judgment. *Id.* at 193, 95 A.2d 860.

As noted, it is undisputed that, when appellant obtained her judgment against Mr. Chambers, the Chambers held the Property as joint tenants. It is also uncontroverted that appellant did not move to levy or execute on her judgment until well after the Chambers conveyed the Property to appellees by deed.

▮▮▮ In the leading case of *Eder v. Rothamel*, the Court made clear that "a judgment lien, without levy or execution on the judgment, does not sever a joint tenancy. . . ." *Eder*, 202 Md. at 193, 95 A.2d 860. Indeed, the Court determined in *Helinski*, 376 Md. at 620–21, 831 A.2d 40, that mere delivery of the writ of execution to the sheriff is not sufficient to sever the joint tenancy and attach the lien. There, the Court found that no severance occurred, and no lien attached, where a judgment debtor died after her creditor had delivered the writ to the sheriff, but before the sheriff executed upon property held in joint tenancy with the debtor. *Id.* at 620–21, 831 A.2d 40.

In this case, the circuit court agreed with appellees that appellant's failure to enforce her judgment prior to appellees' acquisition of the Property was dispositive of her claim. As noted, the circuit court cited *Eastern Shore, supra,* 253 Md. 525, 253 A.2d 367, for "the proposition that a joint tenancy may not be severed when the property is sold before a judgment is executed." Appellant argues, however, that *"Eastern Shore* is supportive of Appellant's position."

In *Eastern Shore,* Otho and William Sturgis purchased a parcel of real property as joint tenants. *Id.* at 527, 253 A.2d 367. Some time after the purchase, Otho obtained a bank loan from the Bank of Somerset, upon which he later defaulted. *Id.* at 528, 253 A.2d 367. The bank then obtained a judgment against him, which it did not immediately attempt to enforce. *Id.* Nearly a year after the bank obtained its judgment, the Sturgises conveyed the real property in fee simple to two married couples, the Hytches and the Penders, "without having executed any prior contract of sale." *Id.* A month later, the bank attempted to levy on the property. *Id.* The Eastern Shore Building and Loan Corporation, the Hytches' and Penders' purchase money mortgagee, intervened as a defendant. *Id.* The Court held that the bank's judgment lien did not attach. It reasoned that, under these facts, "[t]here was never a time ... that Otho and William ever held title to the subject property as tenants in common so that there was no estate in the land which Otho, alone, held in severalty to which the lien of a judgment against him alone could attach." *Id.* at 531, 253 A.2d 367.

The Court explained, *id.* at 530–31, 253 A.2d 367 (emphasis in original):

[T]he mere entry of a judgment against one of the joint tenants does not destroy any of the four unities ... and hence, until there is an *execution* on the judgment which will destroy one or more of these unities, there is no severance of the joint tenancy. If there is a severance of the joint tenancy by way of an execution upon the judgment of one of the joint tenants, the judgment *then* becomes a lien upon the interest of the judgment debtor in the tenancy

in common which then arises. If, however, the judgment creditor does not execute upon the judgment against the judgment debtor-joint tenant during his life, the entire joint estate is held by the surviving joint tenant or tenants by survivorship and without any lien of the judgment against the property thus held by them.... [T]he joint tenants hold *"per my et per tout"* [4] and the nature of the tenancy is that [a] judgment lien cannot attach to the estate in joint tenancy until after severance and the creation of a separate estate in title and possession to which [a] judgment lien can *then* attach.

Appellant suggests that *Eastern Shore* is distinguishable from the instant case because the Sturgises, in *Eastern Shore,* unlike the Chambers here, conveyed their jointly held property "without having executed any prior contract of sale." *Id.* at 528, 253 A.2d 367. According to appellant, *Eastern Shore* is in harmony with *Register of Wills v. Madine, supra,* 242 Md. 437, 219 A.2d 245, on which she also relied. She contends that *Madine* "stands for the proposition that although a transfer of property from joint tenants alone does not sever the joint tenancy and allow a judgment against one of them to attach to the property, a contract will destroy the unity of title and destroy the joint tenancy."

In *Madine,* Rose Hutton and her niece, Helen Madine, held a property known as Woodlands in joint tenancy. *Id.* at 439–40, 219 A.2d 245. The State filed condemnation proceedings against Woodlands, in order to acquire it by eminent domain for use as part of a park. *Id.* at 440, 219 A.2d 245. Once the State and the joint tenants had agreed on a purchase price, Hutton and Madine gave the State a fully executed deed to

---

**4.** This ancient French legal phrase, which is often translated "by the half and by the whole," Black's Law Dictionary 1293 (rev. 4th ed.1968), dates at least to the time of Littleton, whose 15th-century treatise on the English law of real property, the *Tenures,* states that "every joint-tenant is seised of the land which he holdeth jointly *per my et per tout;* and this is as much to say, as he is seised by every parcel and by the whole, & c., and this is true, for in every parcel, and by every parcel, and by all the lands and tenements, he is jointly seised with his companion." Thomas Littleton, *Tenures* § 288 (Eugene Wambaugh ed., 1903).

Woodlands, in fee. *Id.* But, within weeks after the execution of the deed, and before the State had recorded the deed or paid the agreed price, Hutton died. *Id.* The State then tendered the purchase price to Madine, but subtracted an amount of money that Hutton had owed as back taxes. *Id.* Madine sought and received a declaratory judgment that she, as the surviving joint tenant of Woodlands, was entitled to the full purchase price for Woodlands, free of the tax lien against Hutton. *Id.* at 440–41, 219 A.2d 245.

The Court of Appeals reversed. It determined that the State's tax lien had not severed the joint tenancy in Woodlands, because the State had not moved to enforce the lien until after Hutton's death. *Id.* at 441, 219 A.2d 245. But, the Court went on to hold that the joint tenancy had nevertheless been terminated, not by the mere existence of the tax lien, but by the execution of the deed of sale. *Id.* at 446, 219 A.2d 245. The Court reasoned:

> [T]he deed, after delivery and prior to recordation, would have operated as a contract to convey which would pass to the State equitable title and the right to formal legal title. Generally it has been held that a contract to convey will terminate a joint tenancy under circumstances in which a transfer of legal title would do so.

*Id.* at 443, 219 A.2d 245 (internal citations omitted).

The Court noted that there was no indication that Hutton and Madine had intended to hold the proceeds from the sale in joint tenancy. *Id.* at 444–45, 219 A.2d 245. It said, *id.* at 446, 219 A.2d 245:

> [W]hen Miss Hutton and Mrs. Madine delivered the fully executed deed to the State the joint tenancy in the property ended and the ladies held a bare legal title as trustees for the State and the State owed the ladies, as tenants in common, the agreed purchase price. This being so, the State had full right to offset against the amount it owed Miss Hutton for her part of the purchase price the amount she owed the State for inheritance taxes. . . .

Appellant seeks further support in *Alexander v. Boyer,* *supra,* 253 Md. 511, 253 A.2d 359, in which the Court held that an unexercised option contract did not terminate a joint tenancy. In *Alexander,* two sisters held a piece of farmland in joint tenancy. *Id.* at 513–14, 253 A.2d 359. They entered into a contract to sell a portion of the land to a third party, Levine, contingent upon rezoning of the land for a townhouse development. *Id.* at 515, 253 A.2d 359. Under the contract, if Levine did not successfully obtain the rezoning, he would have the option either to purchase the land at the contract price, or to void the contract, in which case the sisters would return his deposit if he had made bona fide efforts to obtain the rezoning. *Id.* at 515–16, 253 A.2d 359. Levine chose not to purchase. *Id.* at 516, 253 A.2d 359. In a subsequent lawsuit, it was determined that he was not entitled to the return of his deposit. *Id.*

Thereafter, one of the sisters died, survived by her husband, whom she named as her sole devisee. *Id.* She was followed in death by the second sister, who died intestate, leaving her husband as her only heir. *Id.* The husband of the predeceased sister sued his brother-in-law, arguing that the contract with Levine (among other transactions) had severed the joint tenancy, converting it to a tenancy in common,[5] in which the widowers held equal half shares as the heirs of their respective wives. *Id.* at 516–17, 253 A.2d 359. The brother-in-law responded that the joint tenancy had never been terminated, and thus he had complete ownership of the property as the sole heir of his wife, the last surviving joint tenant, who had acquired complete ownership via right of survivorship upon her sister's death. *Id.* at 517, 253 A.2d 359.

---

5. A "crucial distinction between a joint tenancy and a tenancy in common is the right of survivorship identified with a joint tenancy." *Downing,* 326 Md. at 475, 606 A.2d 208. "Tenants in common are equally entitled to the use, benefit and possession of the whole common property, provided they do not interfere with the rights of their co-tenants to do the same." *Beesley v. Hanish,* 70 Md.App. 482, 492, 521 A.2d 1235 (1987) (internal citations omitted).

The *Alexander* Court reasoned that the option contract could not "in itself, result in a termination of the joint tenancy *if [the joint tenancy] had existed on the date of the agreement." Id.* at 521, 253 A.2d 359 (emphasis added).[6] Of import here, the Court distinguished *Madine,* stating, *id.* (emphasis added):

> We pointed out in *Madine* that in Maryland and in accordance with the law generally, a contract to convey will terminate a joint tenancy under circumstances in which a transfer of legal title would do so, so that the executed and delivered deed [in *Madine]* transferred the full equitable interest in the land (the grantor holding a bare legal title for the benefit of the State) and resulted in a termination of the joint tenancy. *In the instant case, however, the [contract] was an option contract* and until the conditions precedent were met and the option was exercised by Dr. Levine, no equitable interest or estate passed to Dr. Levine on which specific performance could be granted.... Under these circumstances, the [contract] would not impair any of the four unities and would not result in a severance or termination of the joint tenancy.

According to appellant, although an unexercised option contract does not terminate a joint tenancy, a binding contract of sale does. Summarizing her argument, she asserts:

> The respective cases upon which the parties to this matter rely are consistent and support Appellant's position.... The Court in *Eastern Shore* differentiated the facts of that case, where there was no prior contract for sale and thus the unity of title was intact until conveyance, from a situation where there was a contract, as in *Madine.* In the present case, the contract of October 16, 2004 severed the unity of title and created a tenancy in common between Richard and

---

**6.** The Court concluded that the joint tenancy had been terminated before the execution of the option contract, because a prior lease of a portion of the sisters' property to one sister's husband "result[ed] in a destruction of the unity of interest." *Alexander,* 253 Md. at 521–22, 253 A.2d 359. Therefore, the Court's consideration of the effect of the option contract was dicta.

Alon Chambers. Appellant's judgment could attach at that point, and transfer to Appellees with the Subject Property.

Appellees respond that *Madine* "is wholly inapposite." They reason that in *Madine* the Court "decided the question of whether parties intended to hold the *proceeds* of the sale of property as joint tenants. The holding of *Madine,* therefore, has no application in this case, where the question is whether the joint tenancy in which the Property was held was ever severed." (Emphasis in original).

Appellees characterize appellant's contention that the contract of sale on the Rockville Property severed the Chambers' joint tenancy as "an attempt to avoid the explicit holding of *Eastern Shore.*" Noting that a joint tenancy is severed when one of the four unities is destroyed, they argue that "it is plainly obvious that a contract of sale executed by *both* joint tenants does not destroy any of the four unities because both joint tenants continue to hold the same title and interest and the other unities are unaffected." (Emphasis in original).

According to appellees, because "*both* joint tenants entered into a contract to sell the Property," it follows that "there was no action that destroyed any of the four unities, and the joint tenancy was never severed." (Emphasis in original). They analogize to the impact of a mortgage on a joint tenancy, pointing out that in *Downing, supra,* 326 Md. at 479, 606 A.2d 208, the Court reaffirmed that a mortgage by a *single* joint tenant severs the joint tenancy, but concluded that "where all joint tenants join in the mortgage, none of the unities are destroyed, and there is no reason why the joint tenancy should not continue."

■ Appellant is correct that, but for the fact that Mr. Chambers owned the Property in joint tenancy with his wife, appellant's properly indexed and recorded judgment would have attached as a lien on the Property. "In Maryland, a creditor obtains a vested interest in the form of a lien against the debtor's realty at the time of judgment." *Van Royen v. Lacey,* 262 Md. 94, 100, 277 A.2d 13 (1971). *See also* Md.Code (2006 & 2007 Supp.), § 11–402(b), (c) of the Courts and

Judicial Proceedings Article ("C.J.") ("If indexed and recorded as prescribed by the Maryland Rules, a money judgment of a court constitutes a lien on the judgment debtor's interest in land...."). Moreover, a judgment lien may attach not only to real property held by the judgment debtor at the time of entry, but also "upon any property he thereafter acquires." *Kingsley v. Makay,* 253 Md. 24, 28, 251 A.2d 585 (1969).

As indicated, appellant contends that the contract of sale terminated the Chambers' joint tenancy. The result, argues appellant, would be that "[a]ppellant's judgment lien could ... be enforced against Richard Chambers's interest in the Subject Property, and the lien would transfer with the property to [a]ppellees."

■ We need not resolve appellant's contention. Even assuming, without deciding, that the contract for the sale of the Property terminated the Chambers' joint tenancy, this would not aid appellant. She overlooks that, regardless of the effect of the contract of sale on the joint tenancy, the contract divested Mr. Chambers of any interest in the Property to which appellant's lien could attach. We explain.

■ In Maryland, "[i]t has long been established that a purchaser of land under a contract of sale acquires, not a legal title, but an equitable title." *Kingsley,* 253 Md. at 27, 251 A.2d 585. This is the "doctrine of equitable conversion by which 'the contract purchaser of realty becomes the equitable owner of the property, while the vendor retains a bare legal title.' " *Knight v. Princess Builders, Inc.,* 393 Md. 31, 49, 899 A.2d 156 (2006) (quoting *Watson v. Watson,* 304 Md. 48, 60, 497 A.2d 794 (1985)). *See also Eastern Shore,* 253 Md. at 530, 253 A.2d 367 (quoting *Stebbins–Anderson Co. v. Bolton,* 208 Md. 183, 188, 117 A.2d 908 (1955)) (noting application of "the familiar doctrine of equitable conversion"); *Sands v. Church of Ascension and Prince of Peace,* 181 Md. 536, 544, 30 A.2d 771 (1943) (under the doctrine of equitable conversion, "real estate is considered for certain purposes as personal property, and personal property as real estate").

■ The effect of a contract of sale "is to vest the equitable ownership of the property in the vendee, subject to the vendor's lien for unpaid purchase money, and to leave only the legal title in the vendor pending the fulfillment of the contract and the formal conveyance of the estate." *Kinsey v. Drury*, 146 Md. 227, 232, 126 A. 125 (1924). Therefore, once the Chambers' contract with appellees became binding (i.e. after the Chambers executed the contract, and any contingencies had been fulfilled), appellees became the equitable owners of the Property, although the Chambers retained legal title until settlement.[7]

The result is precisely the same as in *Eastern Shore.* Simultaneously with the execution of the contract, "title to the subject property vested in the grantees...." *Eastern Shore*, 253 Md. at 531, 253 A.2d 367. Like the Sturgises in *Eastern Shore*, the Chambers "never ... held title to the subject property as tenants in common...." *Id.* To be sure, in *Eastern Shore* there was no prior contract, and therefore both equitable and legal title transferred together, at the time of sale, whereas here equitable title transferred when the contract became binding; legal title followed when the purchase price and deed changed hands, completing the conveyance. Unfortunately for appellant, the notation in *Eastern Shore* upon which she relies, that there was no "prior contract of sale," is a red herring. For purposes of determining whether a judgment lien may attach, it is equitable title that matters.

As the *Eastern Shore* Court noted, a judgment creditor " 'is neither in fact nor in law a *bona fide* purchaser, and [she]

---

7. As we have already observed, *see* note 1 *supra*, the contract between the Chambers and appellees is not before us. To the extent that the contract contained any contingencies, equitable title would not have changed hands, and the joint tenancy could not have terminated, if at all, until those contingencies were fulfilled. In *Alexander*, "until the conditions precedent were met," the contract did not "impair any of the four unities and would not result in a severance or termination of the joint tenancy." *Alexander*, 253 Md. at 521, 253 A.2d 359. It is not necessary to consider whether the contract in this case contained any contingencies, however, because appellant did not move to enforce her judgment until after the Property had been deeded to appellees.

must stand or fall by the real, and not the apparent rights of the defendant in the judgment.'" *Eastern Shore,* 253 Md. at 530, 253 A.2d 367 (quoting *Stebbins–Anderson,* 208 Md. at 188, 117 A.2d 908). After the Chambers executed the contract of sale, Mr. Chambers and Ms. Chambers each held "bare legal title." *Knight,* 393 Md. at 49, 899 A.2d 156. As we said in *Wolf Organization, Inc. v. Oles,* 119 Md.App. 357, 369, 705 A.2d 40 (1998), "[a] judgment creditor's lien will not attach to the judgment debtor's bare legal title in property. . . . In that circumstance, the legal title is a technicality. Of course, a judgment creditor of a debtor holding bare legal title to property cannot attach the equitable interest in the property, as it is vested in another."

This principle is deeply embedded in our jurisprudence. It was applied as early as *Hampson v. Edelen,* 2 H. & J. 64, 66 (Md.1807), in which the Court said:

> A contract for land, *bona fide* made for a valuable consideration, vests the equitable interest in the vendee from the time of the execution of the contract, although the money is not paid at that time. When the money is paid according to the terms of the contract, the vendee is entitled to a conveyance, and to a decree in Chancery for a specific execution of the contract, if such conveyance is refused.
>
> A judgment obtained by a third person against the vendor, [between] the making [of] the contract and the payment of the money, cannot defeat or impair the equitable interest thus acquired, nor is it a lien on the land to affect the right of such [equitable title holder].

Maryland courts have consistently applied this principle in the intervening two hundred years. *See, e.g., Himmighoeffer [Himmighoefer] v. Medallion Industries, Inc.,* 302 Md. 270, 280 [487 A.2d 282] (adopting the quoted language from *Hampson,* and holding that execution of contract of sale vested equitable title in the vendee prior to filing of petition for mechanic's lien, such that vendor-debtor's interest in the land could not be reached by the mechanic's lien); *Eastern Shore,* 253 Md. at 530 [253 A.2d 367] ("A judgment creditor stands in

the place of his debtor, and he can only take the property of his debtor subject to the equitable charges to which it was liable at the time of the rendition of the judgment.") (internal citations omitted); *Kingsley,* 253 Md. at 28 [251 A.2d 585] ("The lien of a judgment attaches only upon that which is the debtor's property at the time it is entered or upon any property he thereafter acquires."); *Stebbins–Anderson,* 208 Md. at 187 [117 A.2d 908] ("It is a general rule that the holder of an equitable title or interest in property, by virtue of an unrecorded contract of sale, has a claim superior to that of a creditor obtaining judgment subsequent to the execution of the contract."); *Caltrider v. Caples,* 160 Md. 392, 396 [153 A. 445] (1931) (adopting the quoted language from *Hampson); McMechen v. Marman,* 8 G. & J. 57, 73 (1836) ("[A] judgment [is] a legal lien upon an equitable estate in lands...."); *Galeano v. Galeano,* 21 Md.App. 208, 211 [319 A.2d 129] (1974) ("It is well established in this State that a lien of a judgment creditor does not attach to bare legal title held ... as security for an outstanding debt.").

Several of the cases cited above make reference to the judgment lien attaching to property held by the debtor *at the time judgment is entered. See, e.g., Kingsley,* 253 Md. at 28, 251 A.2d 585. The Chambers owned the Property at the time appellant's judgment was entered, but the fact that they owned the Property as joint tenants distinguishes this case. The general rule is that a judgment attaches upon proper entry as a lien on the debtor's real property. In the case of joint tenancy (and the related form of marital common ownership, tenancy by the entireties), the time at which a judgment is entered may differ from the time at which the judgment attaches to the debtor's real property. At the time judgment is entered, a judgment debtor who is a joint tenant does not hold the kind of property to which a judgment lien can attach, i.e. a separately held equitable interest in real property. The debtor only comes to hold such a property interest when that interest is created by the act of executing on the judgment, which severs the joint tenancy.

In this case, Mr. Chambers never solely held an equitable interest in the Property; it was held jointly. Therefore, there never existed any interest in the Property to which appellant's judgment lien could attach.

*Madine* is not to the contrary. The *Madine* Court described the situation before it in terms wholly consistent with the foregoing analysis: "[W]hen Miss Hutton and Mrs. Madine delivered the fully executed deed to the State the joint tenancy in the property ended and the ladies held a bare legal title as trustees for the State and the State owed the ladies, as tenants in common, the agreed purchase price." *Madine,* 242 Md. at 446, 219 A.2d 245. The State was able to deduct the taxes owed by Hutton from the purchase price because the *proceeds of sale* were not held by Hutton and Madine in joint tenancy. *Id.* at 443–45, 219 A.2d 245. The *Madine* Court reasoned that the "paramount factor" in determining whether the proceeds of sale of joint property remain jointly held "most often is the intention of the parties." *Id.* at 444, 219 A.2d 245. The Court stated that "there was no showing by writing or by fact or circumstance that a joint tenancy in the proceeds of Woodlands was created or intended to be created and ... we see no reason or basis to infer one." *Id.* at 445, 219 A.2d 245. The State had no need to execute its tax lien on the real property, rather than the proceeds, that Hutton and Madine held in joint tenancy, because the transaction at issue was the sale of that real property to the State. Analogizing to the instant case, the State in *Madine* simultaneously occupied the positions of both appellant and appellees here.

 We are also mindful that judgment liens serve an important function in the law of real property with respect to notice. "Under Maryland law, a judgment lien is a general lien on real property of the debtor and signifies only the right of the judgment creditor to order the sale of the debtor's property to satisfy his judgment." *Back v. IRS,* 51 Md.App. 681, 693, 445 A.2d 1057, *cert. denied,* 294 Md. 542 (1982). Money judgments must be recorded and indexed when they are entered. *See* Md. Rule 2–601(c) (2007). Only if a judg-

ment is properly recorded and indexed does it become a lien on the debtor's real property. C.J. § 11–402(b), (c); Md. Rule 2–621 (2007). The purpose of indexing and recording is "to provide a way to give notice to purchasers, mortgagors, lien holders and the like, of the prior conveyances of, or encumbrances on, the property of a particular person." *Greenpoint Mortg. Funding, Inc. v. Schlossberg*, 390 Md. 211, 230, 888 A.2d 297 (2005). Therefore, once recorded and indexed, a lien serves as constructive notice to would-be purchasers of real property held by the judgment debtor that the debtor's property is encumbered. *See Waicker v. Banegura*, 357 Md. 450, 464–65, 745 A.2d 419 (2000) ("[I]f a party, or the clerk of a court, for whatever reason, indexes the judgment under a name that is not identical to the name in which real property in the county is held of record, the general public will not be on constructive notice that a judgment lien exists against that particular piece of real estate."); *see generally id.* at 460–65, 745 A.2d 419 (discussing purposes of judgment lien statutory scheme).

The result that appellant desires would run wholly contrary to the purpose of the judgment lien statute. If appellant were correct, innocent purchasers could, by the act of signing a contract to purchase a parcel of real property, create an encumbrance upon the property.

That the law does not contemplate this result is shown by *Fick v. Perpetual Title Co.*, 115 Md.App. 524, 694 A.2d 138, *cert. denied*, 347 Md. 153, 699 A.2d 1168 (1997). Fick, a judgment creditor, moved to levy and execute on a judgment only after his judgment debtor, Saint–Bell, had conveyed her jointly-held real property to a third party couple, the Bourquins. *Id.* at 528–31, 694 A.2d 138. Saint–Bell had created the joint tenancy during the pendency of the prior lawsuit from which Fick's judgment resulted, by deeding the property, which she had held as sole owner, to herself and her daughter as joint tenants. *Id.* at 528, 694 A.2d 138. Prior to sale, the Bourquins retained Perpetual Title Company to perform a title search on the property to determine whether the property was encumbered by a lien. *Id.* at 530, 694 A.2d

138. Perpetual's title search discovered the open judgment against Saint–Bell, and that the property was held in joint tenancy. *Id.* at 544, 694 A.2d 138. Perpetual disclosed these results of the title search to the Bourquins and advised them that the judgment did not affect the title to the property. *Id.* In the case before the *Fick* Court, Fick alleged that both the conveyance creating the joint tenancy and the conveyance from Saint–Bell to the Bourquins were fraudulent attempts to escape the judgment. *Id.* at 531, 694 A.2d 138.[8] Fick also added a negligence count against Perpetual Title, claiming breach of a duty to search the land records. *Id.* at 531–32, 694 A.2d 138.

The Court rejected Fick's negligence claim. *Id.* at 548, 694 A.2d 138. We observed that "the unpaid judgments did not constitute liens against the property at the time of [Perpetual's] title report because the property was owned by Ms. Saint–Bell and her daughter as joint tenants," and the judgment had not been executed. *Id.* at 544–45, 694 A.2d 138. Noting that appellant did not levy against the property until three days after the settlement of the conveyance to the Bourquins, *id.* at 548, 694 A.2d 138, the Court held: "Therefore, appellant failed to prove a valid lien against the property. Absent proof of a valid lien, neither Perpetual nor its agents could possibly have been negligent in conducting the title search." *Id.*[9]

Our decision in *Fick* presages our conclusion here. If, as we held in *Fick*, it is not negligent to advise a client to proceed

---

8. In the instant case, appellant did not allege in her complaint, before the circuit court, or before this Court, that the conveyance to appellees was fraudulent, or that there is any other basis on which appellees would not be considered bona fide purchasers, as the circuit court found.

9. We noted that Fick received his writ of execution before the settlement, but that Fick had not shown when the sheriff received the writ. *Fick*, 115 Md.App. at 548, 694 A.2d 138. The Court of Appeals's later decision in *Helinski, supra*, 376 Md. 606, 831 A.2d 40, made clear that the sheriff's receipt of the writ does not control; it is the execution of the writ that is relevant.

with purchase of a property that is held in joint tenancy, where one of the joint tenants is a debtor on outstanding judgments, it cannot be the law that those judgments would become encumbrances upon the property when the client contracts to purchase it. If that were the law, the title insurance company in *Fick* might have been liable,[10] because the very purpose of title insurance is to "protect[ ] the insured against loss or damage as a result of defects in or the unmarketability of the insured's title to real property." *Stewart Title Guar. Co. v. West,* 110 Md.App. 114, 128, 676 A.2d 953 (1996).

In sum, appellant was awarded a judgment in August 2003. At any time between that point and October 2004, when the Chambers contracted to sell the Property, appellant could have executed on the judgment, thereby severing the joint tenancy, liquidating the property, and satisfying her judgment from the proceeds. Instead, appellant sat on her rights until June 2006, over a year after the property had been fully conveyed to appellees. By that time, appellant's rights had withered away.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**10.** The insurance company in *Fick* would still not have been liable to the *plaintiff,* however. As we noted, "if any valid lien had existed, and if [Perpetual] negligently failed to discover it, [Perpetual] would have breached no duty owed to Fick. [Perpetual] owed a duty only to ... the Bourquins...." *Fick,* 115 Md.App. at 547, 694 A.2d 138.