56 A.3d 806

Eric ROLAND

v.

Arlin MESSERSMITH, Jr.

No. 854, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Nov. 29, 2012.

Bruce A. Kent, Arbutus, MD (Francis A. Pommett, III, Nathanson & Pommett, PC, Baltimore, MD), on brief, for Appellant.

Raymond F. Weston (Trozzo, Lowery, Weston & Rock, on the brief), Cumberland, MD, for Appellee.

Panel: DEBORAH S. EYLER, GRAEFF, JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

KENNEY, J.

This appeal stems from a dispute over the ownership of a parcel of farm property in Little Orleans, Maryland ("the Property"), which was once owned in undivided fee simple absolute by Laura Roland. After a bench trial, the Circuit Court for Allegany County determined that the effect of two valid deeds relating to the Property was to transfer a 3/5 interest in the Property to Arlin Messersmith, Jr., appellee, as a tenant in common with two of Mrs. Roland's children. The court then granted Messersmith's petition to partition the Property according to those interests.

Eric Roland ("Roland"), personal representative of the estate of Laura Roland, appellant, challenges that judgment, raising a single issue for our review, which we have rephrased as follows:

Did the trial court err as a matter of law in determining that Mrs. Roland could validly grant herself both a life estate and a future interest as a joint tenant remainderman with her children?

For the reasons discussed below, we conclude that the trial court did not err in holding that Mrs. Roland validly conveyed to herself both a life estate and a "remainder," which in the circumstances presented here constituted a possibility of reverter.

## FACTS AND LEGAL PROCEEDINGS

The evidence at trial established that Mrs. Roland and her husband owned the Property, which consists of approximately 94 acres of farmland and a residence, as tenants by the entireties. When her husband died in October 1996, Mrs. Roland became the sole owner of the Property. At that time, she had four adult children: David, Kirby, Eric, and Victoria.

On March 18, 2003, Mrs. Roland executed a deed ("the 2003 deed") that reserved for her a life estate in the Property and

conveyed the remainder to her and her four children as joint tenants with right of survivorship. She continued to live on the Property, along with David and Kirby.

Messersmith, whom Kirby identified as his cousin and a close family member, owned a two-acre parcel adjacent to the Property. Mrs. Roland agreed to sell Messersmith, for $1000, a .67 acre parcel that he needed in order to build on his property, but, under the joint tenancy, she could not transfer any portion of the Property without the agreement of her four children.

Victoria and Eric did not, for financial reasons, want to sell the .67 acre parcel, which led to friction within the family. Mrs. Roland, David, and Kirby sought to break the joint tenancy in order to convey their interests in the Property to Messersmith. When asked "how did the discussion come from the point of giving him a little bit to build a house until he gets all your interest? How did that happen?," David testified:

- "[S]omehow we got into giving [Messersmith] a larger amount. We just thought, oh let them have it. We can live on it for the rest of our lives, let them have it."

- "[W]e thought that if the Messersmith[s] owned our share, well, we thought that [Victoria] and Eric ... probably would lay and wait for us to grow old and then [the Property] would go to them, and then they would split it up and sell it and have an abundance of more of every-thing[.]"

- "We wanted to share with [Messersmith]. We wanted to see him get his house put up and ... get his life started in Little Orleans.... [A]nd in return, we just wanted to receive a little bit of, just a little bit of money and have the ... right to live there until we passed away."

Kirby also testified that Mrs. Roland wanted to convey her interest to Messersmith because there were "things to be done around the house, 'cause we don't have tractors and things to do with, Mr. Messersmith does. And at the time it sounded like a good idea to [Mrs. Roland], to have ... everything transferred to Mr. Messersmith." Messersmith testified that

originally, David and Kirby were "talking about" selling the .67 acre parcel to him, "but after they found out that they couldn't sell it without [Victoria's] signature, then they said they wanted . . . to get rid of it."

An attorney, Raymond Weston, was enlisted at Messersmith's request to prepare a deed. Weston testified that he was aware that Victoria was not going to be transferring her interest but he had been advised that Mrs. Roland, David, Kirby, and Eric wished to convey their interests. When Mrs. Roland, David, and Kirby came to his office to sign the deed, Weston advised them that he represented Messersmith and that the deed as written conveyed all of their "right[s], title and interest" in the Property to Messersmith. According to Weston, Mrs. Roland "read the deed very closely" and "openly discussed" having had a "falling out" with Victoria, whom Mrs. Roland believed needed to be "admonished" for being "greedy" because "others were always there, fixing the property, taking care of her in old age," while Victoria and Eric "weren't helping her out and she wanted to keep it in [the family], so [Messersmith] could use it." Mrs. Roland, David, and Kirby all signed the deed.

Weston then sent the deed to Eric for his signature, with a cover letter containing the same advisements he had given to Mrs. Roland, David, and Kirby. When Eric declined to execute the deed, Weston revised it to provide for conveyances only by Mrs. Roland, David, and Kirby. On November 3, 2005 those three signed the deed ("the 2005 deed"), which identifies Mrs. Roland as a "life tenant" and David, Kirby, Eric, and Victoria as "remaindermen," conveying the property to Messersmith for $10 consideration. The granting clause identifies the grantors as Mrs. Roland, Kirby, and David. The habendum clause [1] provides that Messersmith is "TO HAVE AND HOLD" the Property "for fee simple as Tenant in Common,"

---

1. A "habendum clause" is "[t]he part of an instrument, such as a deed or a will, that defines the extent of the interest being granted and any conditions affecting the grant. ● The introductory words to the clause are ordinarily *to have and to hold*." Black's Law Dictionary 322 (3d pocket ed. 2006).

with Messersmith having a 3/5 interest and Victoria and Eric each having a 1/5 interest. According to Weston, this was intended to be in the nature of a quit claim deed conveying all of Mrs. Roland's interest in the Property because he was not sure whether, under the 2003 deed, Mrs. Roland held both a life estate and a remainder or only a life estate.

David, Kirby, and Messersmith characterized the agreement as a "handshake" deal. It was the understanding of David, Kirby, and Mrs. Roland that they were conveying their entire interests in the Property to Messersmith. In her deposition, however, Mrs. Roland claimed to have *not* understood that she was transferring her interest in the Property. She acknowledged that pressure to sign the deed came from David and Kirby. David, Kirby, and Mrs. Roland believed that they had retained life estates allowing them to live on the Property. David and Kirby also believed that Messersmith would later give them some money.[2]

Shortly thereafter, Mrs. Roland and David consulted an attorney, who advised them that, as a result of the 2005 deed, they no longer held any interest in the Property and that Messersmith was not obligated to let them live there. In April 2006, seeking to set aside the 2005 deed, Mrs. Roland filed suit to quiet title to the Property, arguing that the 2003 deed conveying to her both a life estate and a remainder interest in joint tenancy with right of survivorship was null and void as a matter of law and that the 2005 deed was obtained by fraud or coercion.[3]

The 2005 deed was recorded on May 18, 2006. The following week, in a "Document of Clarification" dated May 24, 2006 and also drafted by Weston, Messersmith stated that, after the conveyance under the 2005 Deed, he "had an opportunity to evaluate the value of" the Property and that, "even though

---

**2.** David testified that "we wanted to help ... and in return, we just wanted to receive a little bit of ... money," whereas Kirby characterized this money as not a "condition" of the conveyance, but rather as a "gift."

**3.** David and Kirby did not participate in the lawsuit.

the [P]roperty was granted for the love and affection that grantors [of the property] felt for" him, he was "now in a favorable financial position and desire[d] to give grantors a reasonable sum representing the value of said property previously conveyed." In addition, the Document stated that David and Kirby "may have non-exclusive rights to reside on said property in the 'Roland House' ... for the term of their natural life for the sum of ten dollars per annum." According to Weston, David and Kirby executed this document as grantees because "they were concerned that depending on what happens to the lawsuit," Mrs. Roland, Eric, and Victoria might "take retribution ... and kick them off the property at some point." David acknowledged that he and Kirby each received a check from Messersmith for $24,000, and that Mrs. Roland was offered the same amount but did not accept it.

In June 2006, seeking to enforce the 2005 deed, Messersmith filed his own quiet title suit to establish his interest as a 3/5 tenant in common with Eric and Victoria, and to partition the Property accordingly. This suit and Mrs. Roland's quiet title suit were consolidated for trial. At the conclusion of a bench trial on November 20, 2007, the circuit court ruled that the 2003 deed was a valid conveyance by Mrs. Roland to herself of both a life estate and a divided remainder interest, and that the 2005 deed was not obtained by fraud or coercion. Messersmith's petition for partition was held in abeyance.[4]

While that matter was pending, Mrs. Roland died, and Eric, the personal representative of her estate, was substituted as the proper party in interest. By order dated June 7, 2010, the trial court entered a final judgment order declaring that the 2005 deed was "valid and effective," and that "by operation of said Deed," Messersmith had a 3/5 interest in the Property

---

4. The trial court explained that it would "hold any ruling on that" partition complaint "in abeyance," and that "if there is no appeal filed, we will revisit it right away," but "if there is an appeal that is taken, we will wait until we ... get a mandate from the Court of Special Appeals." On December 17, 2007, Roland noted an appeal of the November 20, 2007 decision, which was dismissed on July 10, 2008. The mandate was issued the next day.

(consisting of the three 1/5 remainder interests conveyed to him by Mrs. Roland, David, and Kirby), Eric had a 1/5 interest, that Victoria had a 1/5 interest, all held in as "tenants in common." In addition, the order stated "that three commissioners are to be appointed to partition and divide the [P]roperty in accordance with each parties [sic] respective interest." Roland noted this timely appeal.

## DISCUSSION

Here, recast in a more classic property law format, A, the fee simple absolute owner of real property, simultaneously reserved a life estate interest in the property to herself and conveyed the "remainder" to herself and her four children, B, C, D, and E, as joint tenants with right of survivorship. The sole question raised in this appeal is ultimately a legal one: is this a valid conveyance? In other words, may a grantor devise to herself both a life estate and a concurrent remainder interest as a joint tenant with right of survivorship?

Roland argues that the answer is "no" because the conveyance "violates a basic principle of real property law" by allowing the grantor to create a future interest in herself that could never become a present estate. More specifically, in Roland's view, the 2003 deed "created a legal nullity" that "could never be fulfilled" because

[a]s soon as Mrs. Roland passed away, so did her interest as a joint tenant remainder[man], since a joint tenancy by its definition severs that person's interest and leaves it to the remaining joint tenant(s). Had the 2003 Deed left the remainder to the children as tenants in common, rather than as joint tenants, then Mrs. Roland's remainder interest could theoretically have passed through probate.

According to Roland, the true effect of the 2003 deed was to create a life estate for Mrs. Roland, with the remainder to her four children as joint tenants with right of survivorship, and thus, the 2005 deed conveyed only Mrs. Roland's life estate and the remainder interests of David and Kirby. As a result,

Messersmith holds a 2/4 interest in the Property, not the 3/5 interest decreed by the trial court.

■ "The case law setting forth the general rules of construction of deeds affirms that, 'the court should take into consideration the language employed, the subject matter, and surrounding circumstances,' essentially the deed as a whole." *County Comm'rs v. St. Charles Assocs.*, 366 Md. 426, 463, 784 A.2d 545 (2001) (quoting *Weiprecht v. Gill*, 191 Md. 478, 484–85 (1948)). Here, the habendum clause of the 2003 Deed states:

TO HAVE AND TO HOLD the above granted property unto the said [MRS.] ROLAND AND [KIRBY, DAVID, VICTORIA, ERIC], Remaindermen, their heirs and assigns forever in fee simple as joint tenants with rights of survivorship, reserving unto [Mrs.] Roland an estate for life.

In a deposition read into the trial record, Mrs. Roland testified that at the time she executed the 2003 deed, her "understanding was [that] a life estate [was] retained and also a remainderment" that included a 1/5 interest for each of her four children and a 1/5 interest for her.

■ The 2003 deed therefore created a joint tenancy with right of survivorship among Mrs. Roland, Kirby, David, Victoria, and Eric. *See generally Gardner v. Gardner*, 25 Md.App. 638, 642, 335 A.2d 157 (1975) ("The principal characteristic or chief incident of a joint tenancy is the right of survivorship, and the inclusion of such a right in a deed is a clear indication of an intention to create a joint tenancy"). "In a joint tenancy, each tenant 'owns an undivided share in the whole estate, has an equal right to possess, use, and enjoy the property, and has the right of survivorship.'" *Chambers v. Cardinal*, 177 Md. App. 418, 424, 935 A.2d 502 (2007) (quoting *Downing v. Downing*, 326 Md. 468, 474, 606 A.2d 208 (1992)).

■ We do not agree that the 2003 deed could not validly grant Mrs. Roland both a life estate and a "remainder" in joint tenancy with right of survivorship. The Court of Appeals long ago recognized that the same person may simultaneously

acquire by deed both a life estate and a concurrent remainder interest. *See, e.g., Bosley v. Burk,* 154 Md. 27, 29, 139 A. 543 (1927) ("The appellant, under and by virtue of the deed to him, became possessed of the life estate in the whole property devised to Randolph Chalk, and the undivided one-third interest in remainder devised to Alese Chalk."). We see no reason why a grantor may not convey such separate property interests to herself, although in the circumstances presented here, Mrs. Roland's "remainder" is more properly characterized as a contingent reversionary interest known as a "possibility of reverter." *See generally* 3–20 Powell on Real Property § 20.02 ("The hallmark of a reversionary interest ... is that the property returns to the original grantor," and if such an interest is contingent upon the occurrence of some future event, it is known as a possibility of reverter, in contrast to a future interest that goes over to a third person, which is called a remainder).

By reserving a life estate, Mrs. Roland created a present possessory (but non-freehold) interest that would allow her to reside on her farm during her lifetime. By granting concurrent remainder interests to her four children and to herself, and subjecting those interests to a joint tenancy with right of survivorship, Mrs. Roland conveyed future and contingent fee simple interests in the Property to whichever of her four children survived her, while preserving her right to own the Property in fee simple absolute, without the necessity of probate, in the event that all four of her children pre-deceased her.

The viable consequences of Mrs. Roland's life estate plus a possibility of reverter during her lifetime can be demonstrated in the following potential scenarios created by the 2003 deed:

**Scenario 1:** If Mrs. Roland died before any of her four children, then her life estate would end, her possibility of reverter would be extinguished, and the contingent remainders of all four children would vest, so that each of the four children would then have an undivided fee simple interest in the Property, held in joint tenancy with the right of survivorship.

**Scenario 2:** If one or two of Mrs. Roland's four children died before her, then each deceased child's contingent remainder in the Property would be extinguished, so that the surviving children would still have contingent remainders and Mrs. Roland would still have her life estate and a possibility of reverter.

**Scenario 3:** If three of Mrs. Roland's four children died before her, then each deceased child's contingent remainder in the Property would be extinguished, and the remainder of the sole surviving child would remain contingent, rather than becoming vested and indefeasible, because Mrs. Roland would still hold both her life estate and her possibility of reverter.

**Scenario 4:** If all four of Mrs. Roland's children died before her, then all their contingent remainders would be extinguished and Mrs. Roland's possibility of reverter would vest, so that the Property would revert to her in fee simple, with her life estate merging into that interest, resulting in a fee simple absolute in Mrs. Roland.

As the third and fourth scenarios illustrate, Mrs. Roland's possibility of reverter, rather than a nullity that could never materialize, was potentially dispositive in determining ownership rights in the Property. In the third scenario, if Mrs. Roland had not conveyed a "remainder" to herself, then upon the death of three of her children, the remainder interest of the fourth child would have become indefeasible because he or she would be the sole surviving joint tenant. *See generally Chambers,* 177 Md.App. at 424–25, 935 A.2d 502 ("A joint tenancy ... ends once there is only a single surviving joint tenant," who " 'becomes the sole owner of the property pursuant to the right of survivorship.' "). At that point, although Mrs. Roland would still hold her life estate, the surviving child would have had a fully vested and undivided remainder, along with the right to convey that indefeasible fee simple interest to whomever he or she wished, either *inter vivos* or upon death.

But, by conveying the remainder in the Property to her four children *and* herself, Mrs. Roland ensured that, upon the

death of three of her children, the lone surviving child's remainder interest would remain contingent during Mrs. Roland's lifetime. That contingency would have dispositive consequences in the event that the fourth and last child died during Mrs. Roland's lifetime. Specifically, Mrs. Roland ensured that if the fourth child died during her lifetime, his or her contingent remainder would be extinguished, and that the fee simple absolute interest in the Property would revert to Mrs. Roland, who would be free to convey the Property to whomever she wished, either *inter vivos* or upon death.

Moreover, Mrs. Roland also retained the unilateral right to convey that fee simple interest during her lifetime, even though it was a future interest that was both contingent and non-possessory. *Cf. In re Clayton's Trust Estate*, 195 Md. 622, 625, 74 A.2d 1 (1950) ("it has long been settled that a remainder, contingent only as to the event and not as to the person to take, is descendible, devisable and assignable"). There is nothing in the 2003 deed that limits Mrs. Roland's right to transfer either of her interests in the Property; nor is there any language precluding her from eliminating the right of survivorship in that interest by conveying her possibility of reverter to a third party.[5] *See generally Alexander v. Boyer,* 253 Md. 511, 520, 253 A.2d 359 (1969) ("a conveyance of an interest in property held in joint tenancy by one or more of the co-tenants will sever the joint tenancy and cause the share

---

5. Under established property law principles,

    [a] joint tenancy can be severed by a unilateral act of one of the tenants that is inconsistent with the continued existence of the joint tenancy or that operates to destroy or terminate any one or more of the essential unities, and such act effects conversion of the joint tenancy into a tenancy in common and destruction of the right of survivorship.... In the absence of a valid contrary agreement among the joint tenants, each joint tenant is privileged to unilaterally sever the joint tenancy by conveying, encumbering, or contracting to convey his or her undivided fractional interest.... The grantee becomes a tenant in common with the other joint tenant or tenants, while any two or more other joint tenants remain joint tenants with one another.

    7–51 Powell on Real Property § 51.04.

conveyed to become property held as tenants in common with the other co-tenants").

For these reasons, we are not persuaded by Roland's contention that Mrs. Roland's conveyance of a "remainder" interest to herself in joint tenancy with a right of survivorship (*i.e.,* a reservation of a possibility of reverter) was a "legal nullity" because such an interest "could never be fulfilled" during her lifetime. This argument ignores that, as set forth above, Mrs. Roland reserved cognizable fee simple property rights in the Property, so that during her lifetime, it was possible that fee simple absolute title would revert to her, and it was permissible for her to break the joint tenancy and convey her possibility of reverter to a third party.

We therefore hold that the trial court did not err in concluding that, in the 2003 deed, Mrs. Roland validly granted to herself both a life estate and a "remainder." In doing so, Mrs. Roland effectively reserved a contingent future interest that qualifies as a possibility of reverter, which she held concurrently with the contingent remainders simultaneously conveyed to David, Kirby, Victoria, and Eric.

■ Thereafter, by conveying their future interests to a third party in the 2005 deed, Mrs. Roland, David, and Kirby exercised their rights to transfer their future interests, and in doing so severed the joint tenancy created by the 2003 deed and eliminated the survivorship contingency with respect to their future interests. Under that deed, Messersmith held a possessory estate for the life of Mrs. Roland, an interest known as an estate *per autre vie* (literally, an estate for the life of another—in this instance, Mrs. Roland). *Cf., e.g., Carrier v. Crestar Bank, N.A.,* 316 Md. 700, 713, 561 A.2d 227 (1989) ("Because the Residuary Trust was limited in its duration to Muriel's life, Carrier's beneficial interest was an interest *per autre vie, (i.e.* during Muriel's life)."). In addition, Messersmith acquired the concurrent future interests held by Mrs. Roland, David, and Kirby. Messersmith, as a third-party grantee, held those non-contingent remainder interests as a tenant in common with Victoria and Eric.

Mrs. Roland's death extinguished Messersmith's estate *per autre vie*, and the remainders held by Messersmith, Eric, and Victoria became vested, fee simple absolute interests. Therefore, the trial court did not err in determining that Messersmith holds a 3/5 interest in the Property as a tenant in common with Eric and Victoria, each of whom hold a 1/5 interest, and in ordering partition of the Property according to those percentage interests.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**